[Sac. No. 584.   In Bank. — June 21, 1901.]

## M. A. HOWARD, Appellant, v. WILLIAM BRYAN et al., Respondents.

GUARDIAN AND WARD — MORTGAGE OF WARD'S PROPERTY — PRESUMPTIONS — COLLATERAL ATTACK — LIMITS OF JURISDICTION. — Notwithstanding all presumptions are in favor of the regularity of the action of the superior court in the exercise of its jurisdiction in permitting the property of a ward to be mortgaged by his guardian, yet it has no jurisdiction to authorize a mortgage of the estate of a ward for a purpose other than for the ward's immediate benefit, or to pay any debt other than one for which he or his property is liable; and the court can only authorize such a mortgage as he can discharge or redeem by paying what is due from him alone, on his own account.

ID. — INVALID JOINT MORTGAGE — GUARDIAN'S DEBT — AGGREGATE ENCUMBRANCE OF PROPERTY OF SEVERAL MINORS. — The superior court

---

[1] 68 Am. St. Rep. 50.

has no jurisdiction to authorize a joint mortgage of the property of several minor wards to pay an aggregate sum, which includes large private indebtedness of the guardian, for which the estate of the wards is not liable, and which encumbers the property of each minor, with aggregate charges made against the property of all the other minors; and such joint mortgage is invalid and void. [McFarland, J., and Garoutte, J., dissenting.]

ID. — CONSTRUCTION OF CODE — JURISDICTION INURING TO MORTGAGEES — SUFFICIENT PETITION ESSENTIAL. — The provisions of subdivision 6 of section 1578 of the Code of Civil Procedure, that "jurisdiction of the court to administer the estate," etc., "shall be effectual to vest jurisdiction to make the order for the note or notes and mortgage, and such jurisdiction shall conclusively inure to the benefit of the mortgagees," etc., cannot be construed as dispensing with the necessity of a verified petition in substantial conformity with the requirements of the statute, in order to give the court jurisdiction to proceed. [McFarland, J., and Garoutte, J., dissenting.]

ID. — EXCLUSION OF INVALID MORTGAGE — ESTOPPEL OF LIABILITY OF MINORS NOT SHOWN — NONSUIT. — Where the court correctly excluded the joint invalid mortgage from evidence, and there was neither any allegation or proof or offer of proof to show any estoppel upon the minors, or any equitable mortgage as against them, or any liability on their part to a personal judgment, a judgment of nonsuit of the plaintiff was properly entered.

APPEAL from a judgment of the Superior Court of Sacramento County. Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

Arthur E. Miller, and Albert M. Johnson, for Appellant.

R. Platnauer, and White & Seymour, for Respondents.

BEATTY, C. J. — The plaintiff in this action seeks to foreclose two mortgages, alleged to have been given as security for the same debt. The first mortgage was executed by the adult owners of certain undivided interests in a tract of land, and as to that there is no controversy. The second mortgage purports to have been executed by the guardian of five minor children, who were owners of the remaining undivided interests in the same tract. By the decree of the superior court the first mortgage was foreclosed, but as to the second the plaintiff was nonsuited upon the ground that the order of court purporting to authorize it was void. From this portion of the decree the plaintiff has appealed, and the principal question to be determined is the correctness of the ruling of

the superior court sustaining the objection of the respondents to the admission in evidence of the so-called guardian's mortgage,— an objection which was based upon the sole ground that the order of court purporting to authorize said mortgage was void for want of jurisdiction.

The law which empowers executors, administrators, and guardians, when duly authorized by order of court, to mortgage the estates of decedents, minors, and incompetents is embraced in sections 1577 and 1578 of the Code of Civil Procedure, as originally enacted in 1887 and as since amended. The proceedings involved in this inquiry, having been commenced subsequent to March 3, 1893, are governed by the law as amended at that date (Stats. 1893, p. 72), and the question is, whether, upon the face of the record, it appears that the substantial requirements of the statute were complied with in procuring the order empowering the guardian to execute this mortgage.

The steps to be taken by a guardian to obtain such an order are prescribed by section 1578 of the Code of Civil Procedure, the first of which is that he must file a petition showing,—

1. "The particular purpose or purposes for which it is proposed to make the note or notes and mortgage, which shall be either to pay the debts, legacies, or charges of administration, or to pay, reduce, extend, or renew some lien or mortgage already subsisting in said realty, or some part thereof;

2. "A statement of the debts, legacies, charges of administration, liens, or mortgages to be paid, reduced, extended, or renewed, as the case may be;

3. "The advantage that may accrue to the estate from raising the required money by note or notes and mortgage, or providing for the payment, reduction, extension, or renewal of the subsisting liens or mortgages, as the case may be;

4. "The amount to be raised, with a general description of the property proposed to be mortgaged; and

5. "The names of the legatees and devisees, if any, and of the heirs of the deceased, or of the minor, or of the incompetent person, as the case may be, so far as known to the petitioner."

The filing of such petition is to be followed by an order of the court directing all persons interested to appear, and show cause, if any they can, why authority to mortgage should not be granted, and by a hearing at the time designated. If, upon a full hearing, the court is satisfied that it will be for the ad-

vantage of the estate, an order empowering and directing the guardian to execute the mortgage is made. From this it appears that the foundation of jurisdiction in cases of this sort is the petition filed by the guardian for leave to mortgage, and therefore the first thing to be considered is the sufficiency of the petition for the order here in question. It was filed April 3, 1893, by the mother of the respondents, and showed that her husband, Isaac Bryan, had died in October, 1885, leaving a will, by which she was appointed executrix and guardian of the minor children; that she had administered the estate, but had never legally qualified as guardian until March 27, 1893, at which time she became the duly qualified guardian of the five youngest children (the respondents here); that the estate of her husband, which consisted exclusively of the land described in these mortgages, was community property, and had been distributed, — one half to her in fee, as her community share, and the other half in accordance with the provisions of the will, to her for life, with remainder to the children, in equal shares, — that is to say, each of the ten children took one undivided twentieth of the land, subject to her life estate; that from the death of her husband she continued to reside on the land with her children, and supported and educated the minors.

The petition further showed that at the time of his death Isaac Bryan owed two thousand five hundred dollars, secured by a mortgage on said tract of land; that the petitioner had been without any means of support for herself or children, except the income from the land; that the rents had not exceeded six hundred dollars per annum, — a sum wholly insufficient for the support of herself and her minor children; that to pay off the said debt of two thousand five hundred dollars, secured as aforesaid, and to pay debts incurred for the support of herself and children, she had borrowed four thousand five hundred dollars from M. A. Howard (the plaintiff herein), as security for which she had mortgaged her interest in said land; that she had subsequently borrowed from Howard six hundred dollars more, which had been advanced without security, and had been used for the support of herself and these minors; that said sums, together with interest, amounting in all to more than six thousand dollars, were due and unpaid, and that her wards were indebted to her in the sum of five thousand

dollars, which she had expended between November, 1885, and March, 1893, for their support and education.

The petition further alleged that the future expenses of administration, including support of the minors, costs, commissions, and counsel fees, would amount to $4,750.

It was further shown that the interest of the petitioner and one of her adult children in the land had been sold under execution, and a sheriff's deed delivered to one Rider; that he was threatening to and would oust her from possession and claim a partition of the land if she failed to pay him $2,150, for which sum he had agreed to reconvey; that Howard was also threatening to foreclose; that one Dalton had agreed to lend her $10,000 with which to satisfy Howard's and Rider's claims, provided she obtained authority to mortgage the interest of the minors, in conjunction with a new mortgage to be given by herself and her adult children upon their interest in the land; that unless this agreement could be carried out, costly and expensive litigation would ensue, disastrous to the interests of the minors and herself.

Upon these allegations, and others not requiring particular statement, leave was asked to include the interest of the minors in a new mortgage for ten thousand dollars.

Upon the filing of this petition, and upon proper orders and notice to all parties concerned, a hearing was had, and upon a finding that all the allegations of the petition were true, an order was made, empowering the guardian to execute a mortgage of the interest of the minors, in conjunction with a similar mortgage of the interests of the guardian and adult children, for nine thousand five hundred dollars. Both mortgages were accordingly executed to Dalton, who afterwards assigned them to the plaintiff, Howard.

The judgment of nonsuit as to the guardian's mortgage followed inevitably from the ruling of the superior court sustaining the objection of the respondents to the admission of that mortgage when it was offered in evidence. If it was properly excluded, there was no evidence in the case upon which to base any judgment against the minors, or their interest in the land. The points made by the appellant to the effect that, irrespective of the validity of the mortgage, the judgment is erroneous because,— 1. The respondents were estopped to deny its validity; because, 2. It was good as an equitable mortgage; and be-

cause, 3. Plaintiff was, in any event, entitled to a judgment for
the money loaned, — have nothing to sustain them in the record.
There was neither allegation nor proof or offer of proof of any
of the facts constituting the supposed estoppel. It is true that
the complaint contains a general averment that Ellen Bryan,
as guardian of said minors, borrowed from plaintiff's assignor
nine thousand five hundred dollars for their benefit, but it
is not alleged that she expended any portion of it for their
benefit, and the allegation actually made is denied in the
answer. The finding of the court that all the allegations of
the complaint are true was made after the order of nonsuit
had been granted, when the respondents were out of the case,
and cannot bind them. At the time the nonsuit was granted,
no evidence had been offered which would have sustained a
finding of the facts relied upon as an estoppel, or as constitut-
ing an equitable mortgage of the minor's interest in the land.
As to the contention that the plaintiff was entitled to a judg-
ment for the full amount of his loan, it is only necessary to
say that he got such a judgment against the only party upon
whom a personal liability rests, — viz., Mrs. Baker, formerly
Bryan. The full amount due plaintiff is ascertained by the
judgment foreclosing the first mortgage, and if that is not
realized by a sale of the interests of the adult mortgagors, he
is to have a personal judgment against Mrs. Baker for the de-
ficiency. If there were any grounds upon which he might
have claimed a personal judgment against the respondents,
there was no proof of such grounds, or offer of proof, except by
the guardian's mortgage; and if that was properly excluded
upon the objection of the respondents, there could be no judg-
ment against them, any more than there could be a foreclosure
of the mortgage.

These questions being disposed of, there remains but one:
*Was the guardian's mortgage valid?* or, more specifically, *Was
there a valid order authorizing the mortgage?*

This being a collateral attack upon the order, only those
facts and matters appearing upon the face of the record are to
be considered; and if they show no excess or defect of juris-
diction, no mere error of the court in the exercise of its juris-
diction, or irregularity in the proceeding, will invalidate the
order. And in examining the record the same presumptions
are indulged in favor of the regularity and validity of the pro-

ceeding as those which govern the construction of the record in an ordinary action. (*Burris* v. *Kennedy*, 108 Cal. 338.)

Keeping this proposition in view, the first question is, Did the petition comply with the substantial requirements of the statute?

The essential fact to be found by the court as the basis of its order is, that it will be for the advantage of the estate to raise money by a loan, and the statute prescribes the matters which must be set forth in the petition as a basis for the judgment of the court.

The first requisite of the petition is, that it must disclose the particular purpose for which the money is to be used; and in case of a minor's estate, that purpose must be either to pay debts or charges of administration, or to pay, reduce, extend, or renew some lien or mortgage already subsisting on the realty which it is proposed to mortgage.

The petition in this case does not show the existence of any lien or mortgage on the interest of either of these minors. It shows that there had at one time existed a lien on the entire property for two thousand five hundred dollars, but, of course, a very small proportion of this ever attached to the five twentieths owned by these minors, subject to the life estate of their mother, and whatever it may have amounted to in the beginning, it had been fully discharged. The voluntary assumption and payment of this debt by their mother put an end to their obligation.

The petition did contain an estimate of future charges of administration, but it clearly showed that there was no purpose to apply the money borrowed to the payment of such charges, except as to the surplus that might remain after satisfying the claims of Howard and Rider, amounting to over eight thousand two hundred dollars. This sum was, at all events, to be laid out, in the first place, for the discharge of obligations in which the minors were in no manner concerned. It is true that an indebtedness of five thousand dollars from the minors to their mother for expenses incurred by her for their support and education prior to her qualification as legal guardian is alleged in the petition, but, waiving the various objections to this item insisted upon by respondents, it is, after all, more than three thousand dollars less than the amount to be paid to Rider and Howard. It appears, therefore, conclusively from the petition, and is apparent on the face of the record,

that the particular purpose of this proceeding was to enable the guardian to borrow money, not for the exclusive use and benefit of her wards, but largely for her own benefit,— to pay her debts, and to discharge liens resting exclusively upon her estate. All that the petition alleges, the order affirms; and what the petition prays, the order grants. Whatever, infirmity, therefore, appears in the petition attaches to the order, and the question is, whether, under this statute, a court may empower a guardian to mortgage his ward's estate to raise money for his own purposes. If the case was plainly and simply of this aspect,—if, in other words, the petition had shown in plain terms that the estate of the ward was to be mortgaged to pay a debt of the guardian,—no court could have hesitated to say that the order to mortgage was void. But the case is different. The petition alleges an indebtedness of the minors, amounting to five thousand dollars, and although the amount of the loan was nine thousand five hundred dollars, it was to be secured by a mortgage not only of the one-fourth interest of the minors in the remainder, but also by a mortgage of the guardian's life estate and of the remaining three fourths of the fee,—the minors, that is to say, who were to have more than one half of the benefit of the loan were to furnish less than one fourth of the security. This, it may justly be claimed, made the transaction perfectly fair, and even generous to the minors, but we think it was nevertheless in excess of the powers of the court.

The law cannot be construed to authorize the mortgage of a minor's estate to pay any debt but his own. It must be such a mortgage as he can discharge by paying what he is individually bound for, and such as will admit of a redemption by the payment of that which is due from him on his own account.

In this case the power of the court was exceeded, not only in attempting to mortgage the interest of the five minors to secure a sum in excess of their aggregate indebtedness, but also in the attempt to mortgage their separate interests for their aggregate debt. However advantageous it may have seemed in this instance to pursue that course, the proceeding cannot be sustained without establishing a dangerous precedent, from which serious abuses would be certain to flow.

One proposition maintained by appellant remains to be noticed: He contends that no petition whatever was necessary in order to invest the court with jurisdiction to authorize the

mortgage, — a contention based upon the following language, found in subdivision 6 of section 1578 of the Code of Civil Procedure: "Jurisdiction of the court to administer the estate of such decedent, minor, or incompetent person shall be effectual to vest such court and judge with jurisdiction to make the order for the note or notes and mortgage, and such jurisdiction shall conclusively inure to the benefit of the mortgagees," etc.

It is a little difficult, certainly, to give a reasonable construction to this language, but we think it would be most unreasonable to hold that it was intended to dispense with the verified petition which the first clause of the same section says shall be filed. The two provisions must be harmonized, if possible, so that both may have effect; and this may be done by supposing that the clause quoted was inserted out of abundant caution, for the purpose of designating the particular superior court to which the petition to mortgage must be addressed, irrespective of *situs* of the land to be mortgaged. We are satisfied, at all events, that a verified petition in substantial conformity to the statute must be filed in order to give the court jurisdiction to proceed. The omission to file it would be more than an irregularity.

It has been suggested, in support of the view that the court has power to authorize a mortgage without a petition or any of the proceedings prescribed by the statute, that no harm can result to the minor, however unnecessarily or excessively his estate is encumbered, because, it is said, the guardian will be chargeable with the whole sum borrowed, and for any misappropriation will be liable on his bond.

We think this would be a very inadequate protection to the minor, even if there were a bond with sureties sufficient to answer his demand. But no bond is required as a condition to the making of the mortgage, and the bond given by a guardian in qualifying as such does not necessarily or usually cover the value of the ward's real property. It would be an accident if in any case there was a sufficient bond to indemnify the ward for a misappropriation of money borrowed upon the security of his real property. In this case there is no evidence of the existence of such a bond.

The judgment of the superior court is affirmed.

Temple, J., and Van Dyke, J., concurred.

McFarland, J., dissented.

HENSHAW, J., concurring.—I concur in the judgment, but I have reached the same conclusion for reasons somewhat different. They are the following:—

Upon this collateral attack all intendments are to be indulged in favor of jurisdiction and the validity of the court's order. That order authorizes the execution of a mortgage upon the real property of the minors, under an express finding that the allegations of the verified petition are true, and that it would be to the advantage of the estates of the minors, and each of them, to mortgage their property in the manner prescribed. Referring to the petition, then, to support this order, there will be found a great mass of recitals and averments touching the necessity and desirability of a mortgage, which are entirely without the purview of the statute. For example, it is shown that there stood a mortgage of four thousand five hundred dollars against the undivided one-half interest of the mother. By the new mortgage affecting the property of the minors, it is proposed to pay off this mortgage, or in other words, a lien is to be imposed upon the property of the minors to pay the debt of the mother. But, indulging all reasonable intendments in favor of the validity of the order, if there still remains in the petition sufficient averments to uphold the order actually made,—in other words, if with these insufficient and illegal reasons for mortgaging the minors' property there should be shown other legal and sufficient reasons,—it will be concluded that the order of the court directing the mortgage was to raise funds to be devoted to these legal purposes. In this regard the petition further shows two items,—one of $5,000 for costs and expenses already incurred in caring for, maintaining, supporting, and educating the minors; the other, an item of $4,570 for prospective charges of administration and for future cost of maintenance.

To the legality of these items many objections of weight and consequence are raised. As to the five-thousand-dollar item, it is said that it was for the moneys expended for the care and maintenance of the minors by their mother before she obtained letters of guardianship upon their estate. They were expenditures, then, made by their natural guardian, upon whom, in law, the duty of their support was cast, and therefore they form no proper charge against the estate of the minors. Passing this objection, it is next insisted—and this objection is certainly well taken—that it is the duty of the guardian to keep

separate accounts of the disbursements made by her upon ac-
count of each of her wards, because the property of each ward
is liable only for the amount of such expenses actually incurred
in his behalf, and that it is not permissible, therefore, to charge
the lump sum of five thousand dollars against wards A, B, C,
and D, when, of that sum, one hundred dollars only may be
chargeable against ward A, two hundred dollars against ward
B, three hundred dollars against ward C, and the remainder
against ward D.

Against the second item of $4,570, for prospective charges of
administration, it may be said, assuming the legality of each
item composing the charge, that it stands in a somewhat dif-
ferent position from the item of $5,000, because it may be
assumed that the charges of administration will be equally
borne by each of the wards.

But if all these difficulties were removed, and if it could be
said that the court was justified, under the petition and the
showing made upon it, in authorizing a mortgage for nine
thousand five hundred dollars, there still remains what is to
my mind an insuperable objection to the particular mortgage
here in question. It will not be doubted, as has been said in
the opinion of the chief justice, that no court is authorized to
impose a mortgage upon the property of a minor, or to expend
the moneys of a minor, for any other purpose than to benefit the
minor's property or to discharge the minor's obligation. The
property of one minor may not be encumbered with a lien in
aid of his fellow-ward, nor in aid of anybody else. At all times
and under all circumstances that property is to be wisely and
economically administered for the benefit of the minor alone.
The proceedings of a court and of a guardian with a ward's
property are not, and can never be, adversary in their nature.
There are well-defined constitutional limitations to the power
of the court in dealing with the property of the ward. It may
change its form by sale; it may impose a lien upon it, as by
mortgage; it may authorize the expenditure of parts of it when
necessary: but when it acts, it acts only for the benefit of the
ward, and not for the benefit of any third person. In this
case the mortgage authorized by the court was a blanket mort-
gage for the full amount of nine thousand five hundred dollars.
In other words, there was, by the mortgage, a lien imposed
upon the real property of each minor for the full amount of
nine thousand five hundred dollars, notwithstanding the fact

that the amount chargeable against the property of minor A might have been one hundred dollars, against minor B, five hundred dollars, and so on. The legal ·consequences which follow such a mortgage are material. No minor could release or redeem his own property from the mortgage debt without paying the full amount of it. Each minor's property, therefore, is held, not alone for the undetermined amount of his own obligation, but for the aggregate amount of the obligations of all the others. Such a mortgage, I think, is void. The court, in authorizing a mortgage upon the property of a ward, can only authorize it and impose a lien upon the ward's property for the amount of money to be raised for the benefit of that ward; and if there be more than one ward, as here, owning undivided interests in a tract of land in common, either separate mortgages must be ordered, or the mortgage must specify the amount of the lien and charge against the interest of each minor, and provide for the discharge of the lien as to each particular ward's property upon the payment of that amount.

Under the conviction that for the reasons above set forth the mortgage which the court directed to be made, and which in fact was made, is void, as not authorized by the statute, I hold the ruling of the court in refusing it admission in evidence was justified.

GAROUTTE, J., dissenting.—I dissent both from the views and the conclusion declared by the majority of the court in the above-entitled cause, and adhere to the views and conclusion heretofore declared in the opinion found in 62 Pac. Rep. 459.

I cannot agree to the construction given by the court to that portion of section 1578 of the Code of Civil Procedure which provides: "Jurisdiction of the court to administer the estate of such decedent, minor, or incompetent person shall be effectual to vest such court and judge with jurisdiction to make the order for the note or notes and mortgage, and such jurisdiction shall conclusively inure to the benefit of the mortgagee named in the mortgage, his heirs and assigns." To my mind, it is plainly evident that the legislature intended by this provision of the statute to place the order of the court allowing the borrowing of money and giving of a mortgage, beyond collateral attack upon the ground of lack of jurisdiction in the court to make it. I see nothing in the provision which in any

way indicates an intention upon the part of the legislature to enact it for the purpose declared in the main opinion of the court. If that were the intention, then, certainly, the clause of the provision which reads, "such jurisdiction shall conclusively inure to the benefit of the mortgagee named in the mortgage, his heirs and assigns," is mere surplusage, and means nothing.

Neither can I agree with that portion of the opinion which holds that the order of the court giving the guardian authority to make the mortgage is void, after the concession made therein that five thousand dollars of the amount for which the mortgage was given was a debt against the minors, and a debt for which the court could have made an order for the mortgaging of their estate. If the court in this proceeding had jurisdiction to make an order for a mortgage of five thousand dollars, I know of no principle of law which would declare an order for a mortgage of nine thousand five hundred dollars void in its entirety. I believe in such a case, according to every principle of law, the mortgage should be held valid to the extent of five thousand dollars, at least. The law is settled in this state, that where a defendant has been convicted, and sentenced to state prison for a period, for example, of ten years, when the greatest penalty which could be inflicted under the statute for the offense of which he has been convicted was five years, that a judgment of that character is not void in its entirety, but simply void for the excess; and this court has repeatedly held that a defendant under those circumstances is not entitled to his discharge until the expiration of the term of imprisonment fixed by the statute. If this be the rule in criminal cases as to the jurisdiction of courts to render judgments, I see no reason why the same principle should not apply to judgments in civil cases.

Aside from the foregoing conclusions, I am firmly convinced that this order granting the right to mortgage the minors' property for nine thousand five hundred dollars is valid in its entirety. In the petition for the order it is set forth that "the costs and expenses of caring for, maintaining, supporting, and educating the said children from the first day of November, 1885, to the first day of April, 1893, is five thousand dollars." Again, under the head of charges of administration we find items amounting to $4,570. These items include a family allowance for said minors, attorney's fees, guardian's commis-

sions, and other expenses. Expenses of administration and debts created by the minors are items expressly mentioned in the statute for which an order to mortgage may be given. This proceeding being essentially a collateral attack upon the order of the probate court, it must be assumed that the $5,000 item for the care, support, and education of these minors is a valid item, and that the expenses of administration in the amount of $4,570 is also a valid item. We thus have, upon the face of the petition, valid items of expenses set forth, justifying an order for a mortgage to the full amount covered by the order made in this case. It is apparent, for these reasons, that the court had jurisdiction to make the order here involved. It may be conceded for present purposes that the court had no power to make an order to mortgage the minors' property for the payment of the security given by Mrs. Bryan to Howard, nor that it had any authority to make the order for the mortgage to secure money to pay the Rider lien. Yet, even after this concession, there is still upon the face of the petition sufficient facts to justify the court in making an order to mortgage the minors' interest for the sum of nine thousand five hundred dollars. This being so, it will not be presumed upon this collateral attack, in order to defeat and invalidate the mortgage given in this case, that the court made the order for purposes not recognized by the statute. If any presumptions are to be indulged in as to this order, it will be presumed that it was made for valid purposes.

It may be further suggested that no harm can possibly come to minors by reason of the construction here given to orders of the character of the one involved in this proceeding. Upon the other hand, the construction given this order by the majority of the court does the gravest injustice to the mortgagee in this case. It will often be a close question whether or not a certain particular item of charge will come within the designation of debts or expenses of administration; and it would be a gross injustice if a mortgagee is required to decide this question at his peril. Indeed, it would seem, if this be so, that few mortgages would ever be given under the section of the code here involved. As before suggested, there is no hardship upon a minor in a case of this character. He secures the. money; the guardian is responsible to him for it; it can only be expended upon the order of the court for his benefit. If the guardian appropriates it to any other purpose,

he will be liable upon his bond; and here, as an illustration of that principle, if the money secured by this mortgage has not been expended for the benefit of the wards, it still is in the possession of the guardian, or the guardian is liable for its misappropriation. The order allowing the mortgage to be given is in no sense *res adjudicata* as to what claims are valid claims against the estate of the minor.

For the foregoing reasons the judgment and order should be reversed and the cause remanded.