No. 18,437.

THE FIRST NATIONAL BANK OF WINFIELD, *Appellee*, v. MILTON A. BANGS et al., *Appellees*, and CAROLINA L. CATON et al., *Appellants*.

No. 18,914.

THE FIRST NATIONAL BANK OF WINFIELD, *Appellee*, v. MILTON A. BANGS et al., *Appellants*.

SYLLABUS BY THE COURT.

1. GUARDIAN—*Authority to Borrow Money—May Give "Blanket" Mortgage.* Where the same guardian represents several minor wards who are tenants in common of real estate, circumstances may exist which will justify the probate court in authorizing him to borrow money for their common benefit and secure it by a mortgage upon the entire tract.

2. —— *Foreclosure.* In an action to foreclose such a mortgage the question whether circumstances actually existed which justified its execution in that form is not open to inquiry.

3. —— *Authority to Borrow Money — To Purchase Personal Property.* Circumstances may exist which justify the probate court in authorizing a guardian to borrow money by mortgage on the real estate of his ward, for use in the purchase of personal property to be used in connection therewith, in order to make it productive, and in an action to foreclose such a mortgage the question whether such circumstances existed is not open to inquiry.

4. ——— *Payment on Note by Guardian—Tolls Statute of Limitations.* A payment properly made by a guardian from the funds of his ward upon a mortgage executed by himself on order of the probate court will suspend the running of the statute of limitations. Such a payment will be deemed to have been properly made where the guardian's report showing such expenditure has been approved by the court. That such report has been made and approved will be presumed from the fact that the wards have been of age for some time and nothing appears to the contrary beyond a finding in general terms that the probate court did not authorize the payments.

5. ——— *Authority to Mortgage — New Guardian — May Execute Order.* Where an order of the probate court has been made authorizing a guardian to execute a mortgage on his ward's real property, and a change of guardians is effected before such order is carried out, the new guardian may act upon the authority given his predecessor.

Appeals from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed December 6, 1913. Affirmed.

*F. C. Johnson, S. C. Bloss,* and *A. M. Jackson,* all of Winfield, for the appellants.

*W. P. Hackney, J. T. Lafferty,* both of Winfield, and *J. Mack Love,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Th First National Bank of Winfield brought an action to foreclose two mortgages executed by a guardian in behalf of a number of minor wards upon order of the probate court. Judgment was rendered for the plaintiff and a separate appeal is prosecuted by each of two groups of defendants.

It is contended that one of the mortgages is void upon two principal grounds: (1) because it undertook to cover the whole property owned by the minors as tenants in common, without providing for separate redemption by each upon payment of his due

proportion of the debt; and (2) because it was given in part for an indebtedness not owed by any of the minors.

The question raised by the first of these objections was involved in a California case. In deciding it the supreme court said:

"It is next claimed that the order to mortgage is void because it purports to create a joint indebtedness of these five minors for the entire sum, and a single blanket mortgage is given to secure that indebtedness. We have no doubt but that the court was wanting in power to make an order for a mortgage which would bind the interest of each minor for the entire loan, and, if the necessary construction of this order was to bind each minor to that end, it could not stand. But a fair and reasonable construction of the order may be made, which will make it valid, and that construction we are bound to make. Each minor owned an undivided one-twentieth of the real estate, and it will be held in support of the validity of the order that each minor's interest in the estate is only bound as security for one-fifth of the amount of the debt, and upon the payment of that amount his interest will be released from the effect of the mortgage." (*Howard v. Bryan*, 62 Pac. 459, 460.)

Upon a rehearing the mortgage was held to be void, two justices dissenting. (*Howard v. Bryan*, 133 Cal. 257, 65 Pac. 462.) The decision appears to be based on the view that it is not safe to entrust a court with the power to authorize such a mortgage, the ground of the ruling being thus stated:

"In this case the power of the court was exceeded, not only in attempting to mortgage the interest of the five minors to secure a sum in excess of their aggregate indebtedness, but also in the attempt to mortgage their separate interests for their aggregate debt. However advantageous it may have seemed in this instance to pursue that course, the proceeding can not be sustained without establishing a dangerous precedent, from which serious abuses would be certain to flow." (*Howard v. Bryan*, 133 Cal. 257, 264, 65 Pac. 462.)

We can not assent to the proposition that in this state the probate court has no jurisdiction to authorize a guardian to execute a mortgage upon real estate owned by several wards, giving a lien upon all the property for the whole debt secured. Obviously there ought not to be such a complication of interests if it can well be avoided. But in some circumstances it may be unavoidable. If the mortgage is given to take up an existing encumbrance covering the whole property it is manifest that no injury can result. In a particular case the making of a mortgage may be absolutely necessary to save the property to the minors, and at the same time it may be that no mortgage will be accepted except one in "blanket form"— the entire debt being made a lien on all the property. Such a condition might exist where a tax lien is about to ripen into a title. The probate court has jurisdiction to inquire and determine whether in a given case such a situation is presented, and if a mistake of judgment is made the mortgage is not thereby invalidated. Here the findings show that there was urgent need of a loan; the property had been sold at judicial sale upon a tax lien, the period within which redemption could be made was about to expire, and there was no other source from which the money to redeem it could be obtained. It must be presumed that the mortgage was procured upon as favorable terms as could be had under the circumstances. The Kansas statute, in addition to the specific authority for the execution by a guardian of a mortgage on his ward's property, contains this provision:

"Guardians of the property of minors must prosecute and defend for their wards. They must also in other respects manage their interests, under the direction of the court; they may thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of the wards." (Gen. Stat. 1909, § 3975.)

This does not confer an unlimited authority upon the court, but it justifies a liberal interpretation of the powers elsewhere granted.

It is argued that the result of this view is to make each of the wards personally liable for the debt of the others. This question is not involved because no personal judgment was rendered against any of the defendants, the decree simply providing for collecting the indebtedness out of the property.

The basis of the second objection is that there was included in the amount for which one of the mortgages was given the sum of $1800, which was owed to the mortgagee by the father of a part of the minors. The findings disclose these facts: A life interest in the real estate involved was devised to a brother and sister, with a remainder to their respective children, the two sets of minors already mentioned. The property included a large hotel, in process of construction when the testator died. It was completed and opened to the public, being managed for the benefit of the estate by the father of one set of devisees. Furniture and fixtures for the hotel had been procured and were held in his name and he had executed a mortgage upon them for $1800. To save the property from deteriorating and becoming unproductive the guardian took possession in behalf of the minors, and undertook to borrow enough money upon it to put it in condition to produce a revenue. In effecting a loan sufficient for this purpose the item of $1800 (the lien on the furniture and fixtures) was included, and that amount of the mortgage debt is thus accounted for. The probate court directed this use of the borrowed money; as well as the other expenditures regarded as necessary to the preservation of the property in the interest of the minors.

In effect the guardian took over the furniture and fixtures by the assumption of the mortgage against it

—purchased it for the wards, for the amount of the lien. In order that the hotel might be kept up as a going concern it was obviously necessary that some provision should be made for furniture and fixtures. Whether some better arrangement might have been made is not a matter for inquiry here. The plan pursued was reasonably adapted to the end in view, was approved by the probate court, and affords no sufficient basis for an attack upon the validity of the mortgage. Nor can this proceeding be affected by any question of accounting between the owners of the life estate and the remaindermen.

It is contended that the mortgages sued on are barred by the statute of limitations. They were more than five years overdue when action was brought, and are outlawed unless the statute is tolled by payments made upon the indebtedness by the guardian from the funds of his wards. The findings recite that the probate court did not authorize such payments. The fair interpretation of this seems to be that no specific authority therefor was given in advance. There is no suggestion of anything clandestine in the matter. The wards have become of age and presumably the guardian has made an accounting which has been approved by the court. The approval of payments applied upon the mortgage would have the same effect as an original authority. The ordinary rule is that a payment upon an indebtedness made by operation of law does not affect the running of the statute of limitations. (25 Cyc. 1381-1383.) Thus a payment by an assignee for the benefit of creditors is effective only on the theory of an agency and consent. (*Letson v. Kenyon,* 31 Kan. 301, 1 Pac. 562.) But it is. held that while an administrator has no authority to revive barred claims against an estate, payments made by him before the statute has run will suspend its operation. (Note, 98 Am. St. Rep. 700.) A guardian stands upon a some-

what different footing from other representatives. He acts for his ward in all business matters. A payment properly made by him upon an indebtedness which he himself has created by authority of the court should obviously serve to prevent the running of the statute of limitations. We hold the mortgages sued on not to have been barred.

One of the mortgages was executed by a successor of the guardian upon whose application the order therefor had been made. The authority given to one guardian passed to his successor. Such is the rule in the case of executors and administrators (*Albright v. Bangs,* 72 Kan. 435, 438, 83 Pac. 1030), and no reason is apparent why the same rule should not apply in the case of guardians.

Complaint is made that the decree undertakes to sell the right of possession of the property, whereas the owner of a life interest was not a party. If the language of the judgment was inaccurate in this regard no injury resulted to the appellants. Complaint is also made that the amount of the judgment rendered upon one of the mortgages is somewhat in excess of the amount claimed in the petition. An appropriate amendment may be regarded as having been made. It is suggested that certain appearances by attorneys are not conclusively shown to have been authorized, and that this makes the title unmarketable. We think the objection not substantial.

The judgment is affirmed.