No. 31,477

THE EUREKA BUILDING AND LOAN ASSOCIATION, *Appellee*, v. MABEL KOFOID SHULTZ and E. R. SHULTZ, Her Husband, HOWARD E. KOFOID, MILDRED M. KOFOID, a Minor, and MABEL KOFOID SHULTZ, Guardian of the Person and Estate of Mildred M. Kofoid, a Minor, *Appellants*.

(32 P. 2d 477.)

Opinion

filed May 5, 1934.

Owen S. Samuel, of Emporia, for the appellants.

Homer V. Gooing, of Eureka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: While originally an action to foreclose a mortgage, the purpose of this appeal is to determine the personal liability of a minor on a mortgage executed by his guardian.

In his lifetime Harvey Kofoid owned certain lots in the city of Eureka which were mortgaged to a Mrs. Swegle to secure a debt of $2,525. Prior to June 14, 1922, Harvey Kofoid died intestate, leaving as his heirs his widow, Mabel M. Kofoid, and his two children, Howard E. Kofoid and Mildred M. Kofoid, and on the last-mentioned date the mother was appointed as guardian of the minors. In the spring of 1923 the guardian filed a petition in the probate court of Greenwood county alleging that the minors were the owners of a one-half interest in the above-mentioned lots; that there was an indebtedness of $2,600 against the property and it was necessary to borrow $2,500 by mortgaging the described real estate, and that the interest of the minors would be promoted by such mortgage and asking that the amount be borrowed from the Pioneer Building and Loan Association. After notice a hearing was held and the court ordered:

"It is therefore, now by the court, here ordered that said guardian, Mabel M. Kofoid, borrow for the benefit of said minors the sum of $2,500 from the Pioneer Building and Loan Association and that said guardian execute and deliver said guardian's note to such party of the tenor and effect and bearing interest as follows: To be paid in monthly installments as per the contract of said association and that for the purpose of securing the payment of said note said guardian execute, acknowledge and deliver to the payee of said note her guardian's mortgage upon the property hereinbefore described."

On March 3, 1923, the guardian reported that she had borrowed for the use and benefit of the minors the amount of money in said order mentioned from the Pioneer Building and Loan Association and as such guardian had executed to the said Pioneer Building and Loan Association her promissory note and also a mortgage on the real estate of said minors described in said order and that said mortgage and note were in every respect in conformity with the provisions of said order. A note for $2,500 and a mortgage were exe-

cuted by Mabel M. Kofoid individually and as guardian. There was no separation of the principal in the note nor of the interests in the real estate in the mortgage, according to the interest of the widow and the minors, and on the face of the note all were jointly and severally bound, and under the mortgage the minors' interest was fully pledged for payment of the entire obligation. The discrepancy is not explained, but the payee of the note and the mortgagee appears to be the Pioneer Savings and Loan Association, to whose rights the Eureka Building and Loan Association succeeded, and on May 31, 1931, default having been made on the note and mortgage, it filed its suit to foreclose against Mabel Kofoid Shultz, formerly Mabel M. Kofoid, and E. R. Shultz, her husband, Howard E. Kofoid, then of legal age, and Mildred M. Kofoid, a minor. The record does not show the manner of service of summons, but a guardian *ad litem* was appointed for the minor and filed a general denial. The other defendants defaulted. On July 17, 1931, the cause was tried, the journal entry of judgment showing that all defendants have been duly served with summons and are in default except the minor; that plaintiff introduced its evidence and no evidence being submitted on behalf of the minor, the cause was submitted to the court, which found for the plaintiff and rendered a single and entire judgment in its favor against Mabel Kofoid Shultz, Howard E. Kofoid, and Mabel Kofoid Shultz as guardian of Mildred M. Kofoid, a minor, for $1,526.25, and ordered the mortgaged real estate sold to satisfy the judgment.

We are handicapped by failure of the record to disclose dates and amounts clearly and fully, but it seems conceded that at the sale the property did not sell for enough to satisfy the judgment, a deficiency of approximately $1,000 existing. In the meantime Howard E. Kofoid and Mildred M. Kofoid inherited moneys from their grandfather, Carl Kofoid, but before the same were paid to them, the plaintiff instituted garnishment process against the administrator of the Carl Kofoid estate, who answered he had in his possession the sum of $691.71 belonging to each of the children.

Thereupon Howard E. Kofoid and Mildred M. Kofoid, by her mother as guardian and next friend, filed a motion in the foreclosure suit to set aside the personal judgment rendered against them and to correct the journal entry of judgment so as to show a judgment *in rem* and that only their interest in said real estate be held to satisfy the said judgment, and that an order issue to the

garnishee that he be not required to pay the moneys in his hands into court. This motion came on for hearing and was taken under advisement by the court, which found the motion should not be allowed, but requested that plaintiff consent to a modification of the previously rendered judgment reducing the personal liability of each of the moving parties on the deficiency judgment remaining after application of the proceeds of the sheriff's sale of the mortgaged real estate to one-fourth the amount thereof, and the plaintiff consenting thereto it was ordered that the judgment of July 17, 1931, be modified to limit the personal liability of each of the moving defendants to one-fourth of the amount of the judgment remaining unsatisfied. The amount remaining due is not shown either in this order or elsewhere in the record. The garnishee was ordered to pay the $1,383.41 in his hands into court, and the clerk was directed to pay plaintiff one-half of its judgment now remaining unsatisfied and the balance then remaining be paid one-half each to Howard E. Kofoid and Mabel Kofoid Shultz, as guardian of Mildred M. Kofoid, minor.

From the order denying their motion and rendering judgment in favor of plaintiff the moving defendants appeal.

The question for determination is this: Does the execution of a mortgage made by a guardian under an order of the probate court authorizing her to mortgage real estate create an individual liability of the wards so that in event of a foreclosure sale of the mortgaged real estate for less than the amount due, the wards are personally liable for the deficiency remaining unpaid? The question involved in this case presents one which has never been considered by this court, and upon which little authority from other states has been found, and which, owing to differences in the statutes with regard to minor's estates, is not very persuasive. Whatever may be the law in other states, in this state a guardian must act only under the direction of the probate court (*Charles v. Witt*, 88 Kan. 484, 129 Pac. 140) and that court can make no order not authorized by statute. So far as they have any application here, there are but two sections of the statute which need be noticed. The general grant of power to guardians is R. S. 38-210:

"Guardians of the property of minors must prosecute and defend for their wards. They must, also, in other respects, manage their interests, under the direction of the court; they may thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of the wards."

It does not authorize the guardian to borrow money and pledge the ward's property, unless it be held that the last clause of the second sentence does so. Whether it does so is open to debate, at least so far as real estate is concerned, by reason of the specific provisions of R. S. 38-211, which, so far as is necessary, reads as follows:

"When a minor owns property in this state such property or any interest of the minor therein (when not in contravention of the terms of a will) may, under the direction of the probate court from which the letters of guardianship were issued under which the guardian is acting at the time the application is made, be sold or mortgaged on the verified petition of the guardian, either when such sale or mortgage is necessary for the minor's support or education or when his interest will be promoted by the sale thereof because of the unproductiveness of the property or its being exposed to waste or any other peculiar circumstances making it to the interest of the minor to have the property sold or mortgaged. If upon the hearing of such petition the court is satisfied that it is necessary and to the best interest of the minor that the property or any part thereof or the interest of the minor therein be sold or mortgaged as prayed for, the court shall order such property or any part thereof or any interest of the minor therein sold at public or private sale for cash in hand or upon deferred payments for such time and upon such security with interest as the court may direct, or mortgaged for such sum and upon such terms and for such time as the court may by order direct. . . ."

The statements in the application to mortgage are that the minors own one-half of the property, all of which is covered by an indebtedness of $2,600, and that it is necessary to borrow $2,500 by mortgaging the real estate, and the court, in its order finds the fact to be true and that it is necessary to mortgage the property, and then orders the guardian to borrow for the benefit of the minors the entire amount of $2,500. As has been mentioned, the note and mortgage were single and entire, the note bound the guardian personally and the mortgage covered her interest in the real estate as well as that of the minors. The method in which this was done was irregular, and did not sufficiently protect the minors' interest. While this court held in *Bank v. Bangs*, 91 Kan. 54, 136 Pac. 915, that the probate court might authorize the giving of a "blanket" mortgage, it expressly did not pass on the question that such procedure made each minor personally liable for the debt of the others, as the decree simply provided for collecting the indebtedness out of the property. In that case, also, it did not appear that the minors' property, in so far as the note and mortgage were concerned, was intermingled with the guardian's property. However that may be, here the court attempted to correct the situation by reducing the

minors' liability on the deficiency judgment to their proportionate share.

The question left for decision, then, is whether the making of the note and mortgage by the guardian under the probate court's order, created a liability *in personam* against the minors, or only a liability *in rem* against their mortgaged real estate. Our search has disclosed but little authority upon the question of whether proceedings such as are under discussion here are *in rem* or *in personam*. A general discussion of the two types of action may be found in 1 R. C. L. 328; 15 R. C. L. 629; 1 C. J. 1041, and 31 C. J. 1042, and bearing on the general question is the decision in *McCormick v. Blaine*, 345 Ill. 461, 178 N. E. 195, 77 A. L. R. 1215, the fourth and fifth paragraphs of the headnote to which recite:

"A judgment *in rem* is one founded on a proceeding instituted not primarily against the person, but against or upon some thing or subject-matter the status or condition of which is to be determined.

"A proceeding *in personam* is a proceeding against a person involving his personal rights and based on jurisdiction of his person." (77 A. L. R. 1215, headnote ¶¶ 4, 5.)

It should be noted that guardians of minors are of two kinds: of the person and of the estate, and occasion arises where there may be one and not the other. R. S. 38-202 provides for a testamentary guardian; R. S. 38-204 provides for a guardian of the estate, and the sections heretofore quoted and under consideration here have to do with the estate of the minor and not his person. R. S. 38-224 provides for appointment of the foreign guardian of a nonresident minor for the purpose of controlling his property.

In Waples on Proceedings in Rem, page 702, it is said:

"A probate proceeding, to be *in rem*, must possess all the characteristics and embrace all the requisites of that form of action. There must necessarily be a *res*, custody of the *res*, right to proceed against it, a competent forum, allegations equivalent to an information, notice to all interested, a hearing, a finding of facts, an order, judgment or decree, a sale, and a confirmation or homologation, before the 'new title paramount' can be evolved from probate proceedings."

A different rule obtains where the proceedings are adversary in nature, but as proceedings under our act pertaining to minors are not adversary, it is not necessary to discuss that phase of the matter. While not strictly in point, the following from 24 C. J. 572 bears on the point:

"While an application to the probate court by the executor or adminis-

trator for leave to sell the lands of the estate is very generally regarded as a proceeding *in rem*, there is also authority for the view that the proceeding is not *in rem* but in its nature adversary."

In 24 C. J. 508 appears the following:

. "The proceeding to obtain a decree of distribution is not in the nature of a suit between party and party in which one seeks to recover a right withheld by the other; but is analogous in its character to a *proceeding in rem* in which a decision between the parties before the court settles the rights of all parties to the property in question."

And see, also, 11 R. C. L. 54 and 318.

Our statutes provide, in terms, not for borrowing on real-estate security, but for mortgaging the real estate. Appellee argues that the term "mortgage" connotes the borrowing on note, with real estate as security, and while we concede that is generally true, it does not necessarily follow. Ordinarily, there would be no occasion to mortgage a minor's real estate if he were possessed of any personal property, and if the prospective mortgagee did not know that as a matter of general knowledge the records of the probate court would very likely so disclose; either the minor's estate would be destitute of personal property, or a situation would be disclosed putting the mortgagee on notice as to whether the probate court's order to mortgage was providently made. And perhaps one of the reasons the question of liability for deficiency has infrequently arisen, comes from the fact that the mortgagee expects to look solely to the real property pledged.

Provisions are likewise made in the statutes with respect to insane, incompetent and dependent persons for the care, custody, mortgage, lease and sale of their property similar to those provided for minors' estates. (R. S. 39-209 *et seq.*) And the statutes of other states make provisions for the care of property of those under guardianship.

In Woerner on Guardianship it is said:

"The guardian's power to borrow money in behalf of his ward is limited by the rules, already mentioned, according to which the guardian cannot bind his ward by any contract of his own, and that he cannot pledge or mortgage his ward's real estate without the order of a court of competent jurisdiction, to a very narrow compass." (p. 205.)

"In most states the power is now conferred upon probate courts to authorize guardians to mortgage the property of their wards in case it be shown to be for their interest. These statutes, even more rigidly than statutes authorizing the sale of infant's real estate, should be strictly complied with, since there

is always danger the mortgage may be foreclosed, in which case the property rarely brings more than the amount of the encumbrance." (p. 283.)

It is generally held that under all of these statutes the methods for sale, mortgage, etc., are exclusive, and must be strictly complied with. Under these circumstances, when the sole purpose is the care, custody, control and conservation of the property, can it be said that orders of the probate court with respect thereto are *in personam* or *in rem?*

In *Rannells v. Gerner*, 80 Mo. 474, it was said:

"The statute to which reference has been already made, makes provision full and complete for the sale of the real estate of the person in ward [citing statutes]. These statutory provisions must be regarded as exclusive of every and any other mode of disposition of the ward's real estate, and of strictly prohibiting any other method of disposition of it from being adopted, and this in accordance with the maxim *expressio unius*, etc. . . . The steps taken by a guardian of an insane person for the sale of the land of the latter, are proceedings *in rem*, binding no person and effecting [affecting] no person, only so far as they deprive the owner of his land." (pp. 480, 482.)

We are of opinion that when the guardian filed her application for authority to mortgage the minors' real estate, and in accordance with the probate court's order did so mortgage it, she was proceeding not *in personam* but *in rem*, and that she was not creating a personal obligation against her wards, but was pledging their real estate for an amount which the mortgagee was willing to advance thereon, and that the mortgage being so made, in so far as the wards were concerned, in the event of default, the mortgagee must look to the mortgaged real estate and nothing else to be recouped for the amount it had advanced. In the event of such default, of course, the mortgagee, in order to foreclose the mortgage, must have recourse to the district court, the only court of competent jurisdiction, where the minors were necessary parties for the purpose of barring and foreclosing them of any interest in the property as against the plaintiff's lien thereon, saving always to the minors their right of redemption and to their proportionate share of any surplus there might be in a sale of the mortgaged real estate, but not for the purpose of taking any personal judgment against them.

It follows that the order of the lower court rendering personal judgment against the minors was void, and that their motion to have the personal judgment set aside, and to have the garnishee hold the moneys in his hands for their use and benefit, should have been sustained. In view of our conclusion, we shall not discuss the ques-

tion of the jurisdiction of the district court to subject funds reached by garnishment to the payment of the minor's debts, but as bearing on that question see *Hill v. Honeywell*, 65 Kan. 349, 69 Pac. 334.

The judgment of the lower court is reversed, and the cause is remanded for further proceedings consistent herewith.