Stockyards Nat. Bank of So. Omaha v. Bragg et al., 67 Utah 60.

## STOCKYARDS NAT. BANK OF SOUTH OMAHA
## v. BRAGG et al.

No. 4180.    Decided August 7, 1925.    Rehearing Denied May 5, 1926.
(245 P. 966.)

1. GUARDIAN AND WARD.  Court has no power to authorize guardian to mortgage property of ward except as provided by statute.[1]

2. GUARDIAN AND WARD—STATUTE AUTHORISES COURT TO ORDER MORTGAGE OF MINOR'S PROPERTY BY GUARDIAN FOR PURPOSE OTHER THAN TO MAINTAIN MINOR OR HIS FAMILY OR TO EDUCATE HIM OR TO PAY DEBTS AND EXPENSES OF GUARDIANSHIP (COMP. LAWS 1917, §§ 7830, 7831, 7838, 7839); "BEST INTERESTS OF ESTATE." Under Comp. Laws 1917, §7838, authorizing guardian to mortgage property of ward when it appears to satisfaction of court that it is for "best interests of the estate," when construed in light of sections 7830, 7831, 7839, court may order mortgage of minors' property for purposes other than to maintain minor or his family or to educate him or to pay debts or expenses of guardianship, but must be satisfied that mortgage will be to greatest advantage of the estate; "best interests of the estate" meaning greatest or most advantage or usefulness.[2]

3. GUARDIAN AND WARD.  Court cannot under Comp. Laws 1917, § 7838, authorize mortgage on minor's property to secure debt or obligation of another.

4. GUARDIAN AND WARD.  Court may not authorize a guardian to deal with his ward's property as an adult may deal with his own property.

5. GUARDIAN AND WARD—RECITAL, IN ORDER AUTHORIZING GUARDIAN TO MORTGAGE MINORS' PROPERTY AND IN MORTGAGE THAT IT WAS FOR BEST INTERESTS OF MINORS' ESTATE, HELD NOT CONCLUSIVE, WHERE RECORD AND MORTGAGE SHOWED THAT MORTGAGE WAS AUTHORIZED PRINCIPALLY TO SECURE DEBTS AND OBLIGATION OF OTHERS (COMP. LAWS 1917, § 7870). Recitals, in order authorizing guardian to mortgage minors' property and in mortgage that giving of mortgage was for best interests of minors' estate and to protect bulk of it, held not conclusive, where record and mortage showed that mortgage was authorized merely to secure debt and obligation of others, and that protecting interests of minors' estate was a mere incident; it being immaterial that it

---

[1] Andrus v. Blazzard, 23 Utah, 233, 63 P. 888, 54 L. R. A. 354.
[2] Fillmore Com. & Sav. Bank v. Kelly, 62 Utah, 514, 220 P. 1064.

was not essential, in view of Comp. Laws 1917, § 7870, that existence of facts authorizing mortgage be recited in order.

6. GUARDIAN AND WARD—COURT CANNOT AUTHORIZE GUARDIAN TO MORTGAGE MINORS' PROPERTY TO PROTECT THEIR INTEREST IN CAPITAL STOCK OF A FAILING CORPORATION, WHICH INTEREST WAS SUBJECT TO LIFE ESTATE OF MOTHER, IT NOT BEING FOR "BEST INTERESTS OF THE ESTATE" (COMP. LAWS 1917, § 7838). Court *held* without jurisdiction to authorize guardian to mortgage minors' property to protect their interest in capital stock of a failing, if not a then insolvent, corporation, which interest was subject to a life estate of their mother, then 48 years of age; such mortgage not being for "best interests of the estate" within Comp. Laws 1917, § 7838.

7. COURTS—COURT MAY NOT ACT IN EXCESS OF JURISDICTION, THOUGH IT HAS JURISDICTION OF SUBJECT-MATTER AND PERSON. Though court may have jurisdiction of subject-matter and person,

Corpus Juris-Cyc. References:

[1]	Guardian and Ward, 28 C. J. p. 1136 n. 2.
[2]	Guardian and Ward, 28 C. J. p. 1206 n. 99.
[3]	Guardian and Ward, 28 C. J. p. 1206 n. 5.
[4]	Guardian and Ward, 28 C. J. p. 1129 n. 16.
[5]	Guardian and Ward, 28 C. J. p. 1207 n. 14.
[6]	Guardian and Ward, 28 C. J. p. 1206 n. 1.
[7]	Courts, 15 C. J. p. 810 n. 67.
[8]	Courts, 15 C. J. p. 843 n. 8.
[9]	Guardian and Ward, 28 C. J. p. 1207 n. 9.
[10]	Courts, 15 C. J. p. 733 n. 77.
[11]	Judgments, 33 C. J. p. 1139 n. 52.
[12]	Judgments, 33 C. J. p. 1077 n. 72.
[13]	Judgments, 34 C. J. p. 551 n. 39.
[14]	Judgments, 34 C. J. p. 551 n. 39.
[15]	Judgments, 34 C. J. p. 763 n. 42.
[16]	Principal and Surety, 32 Cyc. p. 177 n. 74.
[17]	Principal and Surety, 32 Cyc. p. 177 n. 74.
[18]	Principal and Surety, 32 Cyc. p. 182 n. 7.
[19]	Chattel Mortgages, 11 C. J. p. 562 n. 49.
[20]	Contracts, 13 C. J. p. 307 n. 8.
[21]	Bills and Notes, 8 C. J. p. 206 n. 15.
[22]	Contracts, 13 C. J. p. 247 n. 4.
[23]	Mortgages, 27 Cyc. p. 1117 n. 32.
[24]	Mortgages, 27 Cyc. p. 1117 n. 32.
[25]	Mortgages, 27 Cyc. p. 1117 n. 32.

it may not act or make an order or render a judgment beyond or in excess of jurisdiction.

8. COURTS—REQUISITE JURISDICTIONAL FACTS MUST SOMEWHERE APPEAR IN RECORD THAT DESCRIBES MATTER FOR COURT'S ADJUDICATION AND WHICH IS FOUNDATION OF JUDGMENT OR ORDER. While requisite jurisdictional facts need not be recited in order or judgment to properly invest court with jurisdiction of subject-matter, they must somewhere be made to appear in record that describes matter for court's adjudication and is foundation of judgment or order.

9. GUARDIAN AND WARD—ORDER AUTHORIZING MORTGAGE OF MINORS' PROPERTY MUST BE MADE ON FORMAL APPLICATION OR PETITION, THOUGH EXISTENCE OF FACTS OR PERFORMANCE OF ACTS ON WHICH JURISDICTION OF COURT DEPENDS NEED NOT BE RECITED IN ORDER OR DECREE (COMP. LAWS 1917, § 7838). Comp. Laws 1917, § 7838, authorizing court to permit guardian to mortgage minors' property, does not authorize a mortgage without a formal application or petition or upon a mere verbal suggestion of guardian, or on court's own motion, providing a hearing is had on due notice, because existence of facts or performance of acts on which jurisdiction of court may depend need not be recited in order or decree.

10. PLEADING. Petition or pleading of some kind is juridical means of investing a court with jurisdiction of subject-matter to adjudicate it.

11. JUDGMENT. Judgment which is beyond or not supported by pleadings must fall.

12. JUDGMENT—JUDGMENT OBTAINED AT VARIANCE WITH PRACTICE OF COURT OR CONTRARY TO WELL-RECOGNIZED PRINCIPLES AND FUNDAMENTALS OF LAW MUST FALL. Judgment must fall on showing on face of mandatory record that it was obtained at variance with practice of court or contrary to well-recognized principles and fundamentals of law.

13. JUDGMENT. Fact apparent from mandatory record, showing that fundamental law was disregarded in establishment of judgment, will render it void for all purposes.

14. JUDGMENT—JUDGMENT FOUNDED ON RECORD SHOWING DISREGARD OF FUNDAMENTAL LAW IN ITS ESTABLISHMENT IS SUBJECT TO DIRECT AND COLLATERAL ATTACK. Judgment founded on record, showing that fundamental law was disregarded in its establish-

ment, is subject to direct and collateral attack, and will sua sponte be noticed by courts and acted upon by them without regard to wishes or relations of parties named on record.[8]

15. MOTIONS—ORDER IN EX PARTE PROCEEDING, DECLARING ORDER VALID WHICH ON FACE OF MANDATORY RECORD WAS VOID, HELD NOT RES ADJUDICATA. Ruling of court on ex parte proceeding, declaring order authorizing guardian to mortgage minors' property valid, which order on fact of mandatory record was void, *held* not res adjudicata.

16. PRINCIPAL AND SURETY—CREDITOR AND PRINCIPAL DEBTOR CANNOT, WITHOUT SURETY'S ASSENT, VARY TERMS OF HIS OBLIGATION WITHOUT RENDERING IT INVALID AS TO HIM. Creditor and principal debtor cannot, without assent of surety, vary obligation guaranteed by surety and enlarge his liability, without making it invalid as to him.

17. PRINCIPAL AND SURETY—AGREEMENT CHANGING CONTRACT OF SURETYSHIP SO AS TO INVALIDATE AGAINST SURETY MUST BE FOUNDED ON SUFFICIENT CONSIDERATION AND BE BINDING ON PARTIES, AND NEW CONTRACT MUST BE SUCH AS WOULD BE VALID DEFENSE BY PRINCIPAL DEBTOR TO AN ACTION ON ORIGINAL CONTRACT. Agreement between creditor and principal debtor, changing contract of suretyship so as to invalidate it against surety, must not only be founded on a sufficient consideration and be binding on parties, but new contract must be such as would be a valid defense by principal debtor to an action on original contract.

18. PRINCIPAL AND SURETY—AGREEMENT BETWEEN PRINCIPAL DEBTOR AND CREDITORS FOR MAKING OF ADVANCES ON PROPERTY COVERED BY CHATTEL MORTGAGES, WITHOUT CONSENT OF MORTGAGORS EXECUTING REAL ESTATE MORTGAGES TO SECURE DEBTOR'S OBLIGATION, HELD NOT TO CHANGE OBLIGATION OF MORTGAGORS AS SURETIES SO AS TO RELEASE THEM FROM WHOLE OF OBLIGATION. Agreement between creditors and principal debtor, entered into without consent of mortgagors executing real estate mortgages to secure prior obligation of debtor on chattel mortgages, to advance money to care for property covered by chattel mortgages, which advances were to be a lien on mortgaged property and included in and covered by chattel mortgages, *held* not to change obligation secured by real etsate mortgages and to alter mortgagors' obligations as sureties so as to release them from whole thereof.

[3]*Fillmore, etc., Bank* v. *Kelly,* 62 Utah, 514, 220 P. 1064.

19. CHATTEL MORTGAGES—CHATTEL MORTGAGEE IN POSSESSION IS EN-
TITLED TO COSTS OF ORDINARY REPAIRS MADE ON MORTGAGED PROP-
ERTY, AND FOR REASONABLE DISBURSEMENTS NECESSARY FOR ITS
PROPER MANAGEMENT AND PROTECTION. Chattel mortgagee in
possession is allowed and should be credited with costs of ordi-
nary and reasonably necessary repairs made on mortgaged prop-
erty and for reasonable disbursements and expenses necessary for
its proper management and protection.

20. CONTRACTS—CONTRACT SIGNED AND DELIVERED ON CONDITION THAT
ANOTHER SHALL SIGN AND BECOME OBLIGATED THEREON IS NOT
BINDING AS BETWEEN ORIGINAL PARTIES AND THEIR PRIVIES
WITHOUT HIGHER EQUITIES, WHERE CONDITION IS NOT FULFILLED.
Where contract is signed and delivered by one on condition that
another or others shall also sign contract and become obligated
thereon, if such condition is not fulfilled, contract as to him who
signed and delivered is of no binding effect as between original
parties and privies having no equities other or greater than those
of original parties.[4]

21. CONTRACTS—DELIVERY OF CONTRACT MAY BE SO CONDITIONED BY
IMPLICATION THAT IT SHALL NOT BE VALID UNLESS OTHERS ALSO
SIGN. For delivery of contract to be so conditioned that it shall
not be valid unless others shall also sign, it is not necessary that
express words to that effect be used at the time, but such con-
clusion may be drawn from all circumstances which properly form
a part of entire transaction.

22. CONTRACTS—CREDITOR'S AGREEMENT TO EXTENSION OF TIME FOR
PAYMENT OF INDEBTEDNESS, IF MINORS AND ADULTS EXECUTED
BINDING MORTGAGE SECURING INDEBTEDNESS, HELD BILATERAL
AND NOT ONLY UNILATERAL. Agreement of creditor to extension
of time for payment of indebtedness, on condition that a lawful
and binding mortgage securing idebtedness be executed by minors
as well as by adults, was bilateral and not only unilateral.

23. MORTGAGES—AVERMENTS AND FINDINGS IN SUIT TO FORECLOSE
MORTGAGES HELD TO SHOW CONDITIONAL DELIVERY OF MORTGAGE
BY ADULTS. Averments and findings in suit to foreclose mort-
gages *held* to show that mortgage by adults was signed and de-
livered on condition that interests of minors in and to real estate
be pledged jointly with their interests.

---

[4]*Martineau* v. *Hanson*, 47 Utah, 549, 155 P. 432; *Central Bank* v.
*Stephens*, 58 Utah, 358, 199 P. 1018.

24. MORTGAGES—MORTGAGE DELIVERED BY ADULTS, ON CONDITION THAT INTERESTS OF MINORS IN REAL ESTATE BE PLEDGED JOINTLY WITH THEIR INTERESTS, HELD INVALID, WHERE MORTGAGE OF MINORS WAS VOID. Where mortgage was signed and delivered by adults, on condition that interests of minors in real estate be pledged jointly with their interests, failure of fulfillment of condition in that mortgage of minors was void rendered mortgage of adults invalid; it being immaterial that there were two mortgages, where both were parts of same transaction.

25. MORTGAGES—ADULTS, ACCEPTING PROPOSITION OF CREDITOR TO EXTEND TIME OF PAYMENT OF INDEBTEDNESS IF THEY WITH MINORS EXECUTED VALID MORTGAGE OF REAL ESTATE, CREATED NECESSARY IMPLICATION THAT THEY DID SO ON ALL OF STATED CONDITIONS IN PROPOSITION. Where creditor agreed to given extension of time for payment of indebtedness, if both adults and minors gave a valid mortgage on real estate owned by them, adults, in accepting propostion and signing and delivering their mortgage in pursuance thereof, created necessary implication that they did so upon all of stated conditions in proposition, including one that minors give a valid mortgage of their interest.

Appeal from District Court, Third District Salt Lake County; *Ephraim Hanson,* Judge.

Action by the Stockyards National Bank of South Omaha against Laura I. Bragg and others. Judgment for plaintiff, and defendants appeal.

Reversed and remanded, with directions to dismiss in part, and reversed and remanded in part.

*H. C. Brome,* of Basin, and *W. T. Gunter,* of Salt Lake City, for appellants.

*Morsman, Maxwell & Haggart,* of Omaha, Neb., and *Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

STRAUP, J.

This is an action to foreclose two mortgages on real property in the business district of Salt Lake City, Utah. Three

of the mortgagors executing the one were adults and two executing the other were minors. The court entered a decree of foreclosure as to all of them. They all appeal.

The claims made are: That the mortgage on behalf of the minors is void for want of authority of their guardian who executed it; that all of the mortgagors were sureties, and that the written obligation secured by the mortgages was, without their consent, materially changed and thereby they were released from their surety obligation; that the adults signed and delivered the mortgage on their behalf on the agreement and understanding that all the right, title and interest of the minors in and to the mortgaged property be also mortgaged by a good and sufficient mortgage, but that the mortgage on behalf of the minors was void, and, since the minors are not bound, neither are the adults.

Fred Bragg, a resident of Wyoming, died in January, 1917. He left surviving him Laura I. Bragg, his widow, and William F., Robert R., Frederic I., and Laura L. Bragg, his children; the last two named being minors. All were residents of Wyoming. Neither the deceased nor any any of his heirs at any time resided in Utah. The principal estate left by the deceased consisted of one-half of the capital stock of Noble & Bragg, a Wyoming corporation engaged in the cattle, sheep and ranching business in Wyoming; and an undivided one-half interest in business property known as the Eagle Block in Salt Lake City, Utah. By will the deceased devised and bequeathed all of his property, real and personal, including the real estate in Salt Lake City and the capital stock of Noble & Bragg, equally to his four children, subject, however, to a life estate of his widow, such life estate to terminate on her remarriage or death. She was 48 years of age and had a life expectancy of 23 years. So it is averred in the complaint of plaintiff. The property in Wyoming was distributed in accordance with the will by the Wyoming court and the real estate in Salt Lake City by the Utah court. Thus the two minors each succeeded to an undivided one-eighth interest in and to the capital stock of

Noble & Bragg and to an undivided one-eighth interest in and to the real estate in Salt Lake City, all subject to their mother's life estate. The mother, by the Utah court, was appointed guardian of the minors' estate in Utah which alone consisted of their interest in the real estate in Salt Lake City. No direct evidence was given as to the value of such real estate or of the capital stock of Noble & Bragg; nor as to the value of any of the property of the deceased at the time of his death; nor as to the value of his assets; nor as to the amount of his liabilities. However, there are some indirect averments concerning the financial condition and ability of Noble & Bragg which presently will be noticed.

In May, 1920, Noble & Bragg, in Wyoming, purchased from one Arnold a band of sheep consisting of 7,194 ewes, 345 lambs, and 277 bucks for $144,470, or at an average purchase price per head of nearly $19; $50,000 were paid in cash, and four promissory notes, one for $19,470 and three for $25,000 each, with interest at 10 per cent, per annum, payable on November 1, 1920, were given by Noble & Bragg for the unpaid purchase price amounting to $94,470. The notes were executed by Noble & Bragg by Laura I. Bragg, president of the company, and by William F. Bragg, the assistant secretary. The notes were also personally indorsed by Laura I. Bragg and William F. Bragg. To secure the payment of the notes, Noble & Bragg gave a chattel mortgage on the sheep so purchased by it. When the notes matured, there had been paid on the principal the sum of $10,727 and interest amounting to $4,931. The company was financially unable to pay more. It then had no funds or credit with which to carry on the business or to run or care for the sheep. It then was in failing circumstances if not insolvent. It is alleged in the complaint of plaintiff that it was insolvent. Arnold thereupon agreed to extend the time of payment of the notes 11 months, provided Mrs. Bragg and her children, including the minors, would give him a mortgage on all their interest in the Eagle Block in Salt Lake City to secure the payment of the notes. In accordance therewith,

and as security for such purpose, Mrs. Bragg and William F. and Robert R. Bragg, the two adult children, December 27, 1920, executed a mortgage conveying to Arnold all their right, title, and interest in and to the Salt Lake real estate as security for the payment of such notes. On the same day Mrs. Bragg, as guardian of the minor's estate in Utah, petitioned the district court of Salt Lake county for authority to mortgage for the same purpose all the right, title, and interest of the minors in and to the Salt Lake real estate. Such order was granted on the 14th day of January, 1921, and, on the same day, she, as guardian, executed a mortgage conveying to Arnold all the right, title, and interest of the minors in and to such real estate to secure the full payment of such notes of Noble & Bragg. On the same day Arnold entered into an agreement with the Continental National Bank of Salt Lake City, who also had a mortgage on about an equal number of sheep of Noble & Bragg other than those covered by Arnold's chattel mortgage, to share equally in caring for and running both herds; Arnold agreeing to secure the services of an experienced and competent man for such purpose at a salary not to exceed $200 a month, and on the same day Noble & Bragg agreed with Arnold and the bank that all such expenses incurred and sums advanced in caring for and running the sheep should be a first charge and lien on the sheep, and to be secured by the chattel mortgages held by the bank and Arnold, and to be first paid out of any income derived from sales of wool, lambs, or sheep. It was stipulated between the parties that, when such contract was made and the mortgage of the minors of their interest in the Salt Lake real estate executed, Noble & Bragg was without funds or credit to run and care for the sheep, and that the bank and Arnold entered into such arrangement to so advance moneys to protect their mortgaged property and to save it from depreciation and loss, and that the costs and expenses in running the sheep covered by Arnold's chattel mortgage were about equal to the costs and expenses of running the sheep covered by the bank's mortgage.

The court found that, when the mortgage of the minors' interests in the Salt Lake real estate was executed and the contract entered into between Aronld, the bank, and Noble & Bragg, Arnold took possession of the sheep and between that time and December 3, 1921, paid one-half of the costs and expenses in running and caring for both herds, amounting to $11,431.68. On December 3, 1921, the sheep covered by Arnold's chattel mortgage were sold on foreclosure proceedings. The gross amount realized on the sale was $28,-662. After deducting from that amount the expenses incurred in running the sheep paid out by Arnold and the costs of foreclosure and applying the remainder on the notes, there was left due and unpaid on the notes, principal and interest, the sum of $67,293, for which amount foreclosure was decreed and $3,000 attorney's fee, and all the right, title, and interest of the mother and of the children, including the minors, in and to the Salt Lake real estate was ordered sold in payment thereof; first, the interests of the mother and of the adult children and then of the minors. Just prior to the commencement of the action, Arnold assigned and transferred the notes and mortgages to plaintiff. It admittedly is not a due course holder.

No point is made as to the appointment of Mrs. Bragg, a nonresident of Utah, as guardian of the estate of the minors in Utah, who were also nonresidents of Utah. She, however, was not, by the Utah court, appointed guardian of the person of the minors, only of their estate in Utah.

A verified petition was filed by her in the Utah court for authority to mortgage the real estate for and on behalf of the minors. That petition was not put in evidence, and therefore is not before us. However, the order authorizing and directing her to execute the mortgage is before us. It recites that a verified petition was filed; that "due notice given" and no protest made, and that "from the petition and legal evidence adduced" all the matters and things set forth in the petition were true, "and that it is for the best interests of said minors and of their estate to grant the prayer of said

petition." The order further recites that the minors each had an undivided one-fourth interest in and to an undivided one-half interest in and to the real estate, fully described, subject, however, to the life estate of the mother who was the guardian; that the deceased died in January, 1917, "leaving a large estate," no part of which was in Utah except the real estate sought to be mortgaged; that the estate of the deceased not in Utah consisted of an interest in the corporation of Noble & Bragg, which theretofore was distributed in accordance with the will; "that the said business of Noble & Bragg, in which said minors are interested as aforesaid, is heavily involved financially, owing, at the present time, approximately $150,000, and under the present financial stress it is impossible to raise funds without great financial sacrifice; that approximately $85,000 of the indebtedness of said Noble & Bragg is now due and unpaid; that the holder of said indebtedness has consented to extend the time of payment thereof for a period of eleven months from the 1st day of November, 1920, provided and on condition that the said debtor (creditor) is given security for said debt; that to secure said extension and to avoid the sacrifice of valuable property by forced sale at this time of financial depression your (the) petitioner and the adult owners of said property as aforesaid have executed a mortgage on their interest in said property, and it is to the best interests of said guardianship estate and of each of said minors that their interest should be covered by a similar mortgage for the protection of the bulk of their estate as hereinbefore set forth; and it further appearing that said mortgage is desired to secure the payment of the specific indebtedness hereinbefore mentioned as past due in the sum of $94,470, with interest at the rate of 10 per cent. per annum, except the sum of $10,727.78 paid on the principal thereof, and the sum of $4,931.99 paid on account of accruing interest thereon as evidenced by four certain promissory notes three of which are for the sum of $25,000 each and one for the sum of $19,470." The language in the order "the bulk of their estate as hereinbefore set

forth" refers to the undivided one-eighth interest in and to the capital stock of Noble & Bragg, subject to the life estate of the mother. Copies of the notes of Noble & Bragg, the payment of which the guardian was directed and authorized to secure, are set forth in the order.

The order further recites:

"And the said guardian is further authorized and directed to do all things necessary and proper to be done to the end that the said indebtedness shall become and constitute a good and sufficient lien under a good and sufficient mortgage in due form upon all of the right, title, and interest of the said minors in the premises hereinbefore described (the Salt Lake real estate) to secure the payment of said indebtedness, including in said mortgage such provisions for the payment of taxes, maintaining insurance, and attorney's fee as are usual in transactions of this character. And it is further ordered, adjudged and decreed that said mortgage is advisable and necessary to safeguard the rights and property of said minors and is for the best interests of their said estate."

In pursuance of such order, and on the same day, the guardian, to secure the payment of the indebtedness of Noble & Bragg, executed and delivered such mortgage. The mortgage also recites the substance of the order, the death of the deceased; the interest which the minors had in and to the capital stock of Noble & Bragg and in and to the Salt Lake real estate, all subject to the life estate of the mother; the business of Noble & Bragg; that it was heavily involved financially, owing, at that time, approximately $150,000, of which approximately $85,000 was past due and unpaid; that the holder of such indebtedness, Thomas F. Arnold, had consented to extend the time of payment thereof for a period of 11 months from the 1st day of November, 1920, provided and on condition that the indebtedness was secured by mortgage of the mother and of all of the children on the Salt Lake real estate, and that it was to the best interests of the minors that such mortgage be given, and that it was necessary to do so for the protection of the bulk of their estate, and that the mortgage was given as security for the payment of the four promissory notes of Noble & Bragg ag-

gregating $94,470, copies of which were set forth in the mortgage.

It, among other things, is contended by the minors that the court was without power to grant such an order as was here made or to authorize the guardian to execute a mortgage for the purpose as disclosed on the face of the order and of the mortgage. In such respect it is contended that the effect of the order was to authorize a mortgage of the minors on their property in Utah to secure the debt or obligation of Noble & Bragg, a failing corporation, as well as to secure the debt or obligation of the guardian and one of the adult children who had indorsed the notes of Noble & Bragg to secure the payment of which the mortgage was authorized, and that it, on the face of the order and of the mortgage, is shown not to have been for the best interests of the estate of the minors to give a mortgage for such purpose; that the court, at most, could authorize a mortgage on the minors' property to the extent only of protecting their interest or obligation, but not that of their mother, or of the adult children, and especially not of the corporation of whose capital stock the minors each held only an undivided one-eighth interest; and that under the statute the court in no event had power to authorize a mortgage of the minors' property in Utah to secure or protect even their interest in or property owned by them in Wyoming or elsewhere not in Utah.

Except as provided by statute, it is clear the court had no power to authorize the mortgage. *Andrus* v. *Blazzard,* 23 Utah, 233, 63 P. 888, 54 L. R. A. 354.

Comp. Laws Utah 1917, §§ 7830, 7831, 7838, and 7839, in force when the mortgage was authorized, but which were not all in force when the mortgage in *Andrus* v. *Blazzard,* supra, was given, provide:

(7830) "Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as necessary, for the comfortable and suitable maintenance and support of the ward and his family, if there be any; and if such

income and profits be insufficient for that purpose, the guardian may sell, mortgage or lease the real estate, upon obtaining an order of the court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

(7831) "Every guardian appointed under the provisions of this title must pay all just debts due from the ward out of his personal estate and the income of his real estate, if sufficient; if not, then out of his real estate."

(7838) "When a sale of the property of a ward is necessary to maintain him or his family, or to maintain and educate the ward when a minor, or to pay the debts and expenses of guardianship, or when it appears to the satisfaction of the court that it is for the best interests of the estate that he real or personal propery, or some part thereof, be sold, mortgaged, or leased, the guardian may sell, mortgage, or lease the same, upon an order of the court.  *   *   *"

(7839) "If the estate is sold for the purposes mentioned in this title, the guardian must apply the proceeds of the sale to such purposes, as far as necessary, and put out the residue, if any, on interest, or invest it in the best manner in his power, until the capital is wanted for the maintenance of the ward and his family, or the education of his children, or for the education of the ward when a minor, in which case the capital may be used for that purpose, as far as may be necessary, in like manner as if it had been personal estate of the ward."

Under these provisions, and when considered in connection with the entire chapter relating to guardianship, it is contended by the minors that the court was authorized to maintain and educate the ward or to pay debts and expenses of guardianship and when there was not sufficient property or income from real estate with which to pay such, and that, as appears on the face of the record, the mortgage was not authorized for any such purpose, and that the words in section 7838, "when it appears to the satisfaction of the court that it is for the best interests of the estate," relate to such other provisions, to maintain and educate the ward and pay debts and expenses of guardianship, and must be so considered and construed in connection therewith. On the other hand, the respondent contends that such words and phrase constitute an independent condition wholly

distinct from such other and preceding provisions, and hence the court was authorized to order the mortgage for any and all purposes when made to appear to the satisfaction of the court that to do so was for the best interests of the estate of the minors. Such words or phrase was not in the statute when the mortgage in *Andrus* v. *Blazzard,* supra, was executed. The meaning of the statute in such respect is not free from doubt. However, we are of opinion that a proper construction of the statute does not call for such a restriction as is contended for by the minors, and hence the court is authorized to order a mortgage of a minor's property, real and personal, for purposes other than to maintain the minor or his family, or to educate him, or to pay debts or expenses of guardianship. Such seems to be the view taken by this court in the case of *Fillmore Com. & Sav. Bank* v. *Kelly,* 62 Utah, 514, 220 P. 1064. The words, "best interests of the estate," while general and flexible, yet have their limitation. They here mean the greatest or most advantage or usefulness. The court must not only be satisfied that it is meet and proper to order the mortgage, but that it is to the greatest advantage of the estate or that it is necessary to do so.

The minors further contend that the words "interests of the estate" mean the estate within the jurisdiction of the court, the estate which is being administered by the court and of which the guardian has charge. That is, it is contended that, if the court may authorize a mortgage on one or several parcels of property, real or personal, within the jurisdiction of the court, it must benefit such or other property also within the jurisdiction of the court, but could not be made to protect or benefit property without the jurisdiction of the court and not being administered by it; and, since the real estate of the minors in Utah, the only property they had within the jurisdiction of the court, was mortgaged to protect or benefit an interest held by them in a foreign corporation whose assets and property were without the state, the mortgage was void. The disposition made by us

of the case renders it unnecessary to consider or determine such claim.

It further is urged by the minors that, assuming the court had power to authorize a mortgage for the best interests of their estate, both within and without the jurisdiction of the court, yet it manifestly appears on the face of the record of the court authorizing the mortgage, and on the face of the mortgage itself, that the mortgage was not for the best interests of their estate but was in effect mortgaging their property to secure the debt of others, principally the debt of a foreign corporation which, if not then insolvent, nevertheless was in failing circumstances, and that of the guardian and one of the adult children, indorsers of the notes secured by the minors' mortgage, and that in doing so the court exceeded its authority and jurisdiction in the premises. Against that the respondent urges that it was competent and within the jurisdiction of the court authorizing the mortgage to hear and determine whether it was or was not for the best interests of the estate of the minors to authorize the mortgage, and that on the verified petition of the guardian, on a hearing had on due notice, and on legal evidence adduced, as recited in the order, and the court finding and adjudging that it was for the best interests of the estate of the minors to give the mortgage, as also recited in the order, the order or judgment of the court in such respect is conclusive and may not now be challenged on collateral attack as this is, and that what is now urged against the order is mere alleged error committed in the exercise of jurisdiction which may not collaterally be questioned or reviewed. This presents the crux of the case.

That the order, as appears on the face of the record of the court authorizing the mortgage, was improvident and prodigal is clear. But that is not enough to now sustain the minors' contention in such respect. Such may be said to be mere error, flagrant error, in the exercise of jurisdiction. But, as appears on the face of the record—the recitals therein contained and facts therein found—the matter lies deeper

than that. Whatever liberality under the statute may be indulged as to the power of the court to authorize a mortgage on a minor's property, it certainly cannot be said that a court has power to authorize it to secure a debt or obligation of another. That the court has such power is not claimed. The order recites that the mortgage was desired and was authorized to secure the payment of a specific indebtedness past due of Noble & Bragg, a corporation of Wyoming, in the sum of $94,470, evidenced by four promissory notes executed and delivered by the company and indorsed by the guardian and one of the adult children; that the company was heavily involved financially, owing at that time approximately $150,000, of which $85,000 was then due and unpaid, and that it was impossible for it to raise funds without great financial sacrifice; and it was stipulated by the parties that when the mortgage was authorized the company was without funds or credit with which to run and care for its sheep, the principal if not the only business in which it then was engaged, and that it then was necessary for Arnold and the bank to advance moneys to care for and run the sheep. In the complaint of plaintiff it is alleged that Noble & Bragg was insolvent, and that, when the mortgage of the minors was authorized, the company was unable to pay the principal or interest on the notes, the payment of which the mortgage of the minors was authorized to secure. In the answer of the minors, it is alleged, and in the reply of plaintiff it is admitted:

'That by the last will and testament of said deceased all of his property, both real and personal, including the Salt Lake real estate and improvements covered by the mortgages described in plaintiff's complaint herein, and including one-half of the capital stock of Noble & Bragg, a corporation, to wit, 1,500 shares thereof, vested in his said four children, subject to a life estate of his said widow, Laura I. Bragg, therein, said life estate to terminate upon the remarriage or death of said wife."

These minors, thus, when the mortgage was authorized, had each an undivided one-eighth interest in and to the capital stock of a failing if not a then insolvent corporation,

"subject to a life estate" of their mother 48 years of age. In the order it is recited that the mortgage was authorized to protect "the bulk of the estate of the minors," which, as also recited in the order, consisted of their interest in the capital stock of Noble & Bragg, which, as also recited and admitted, was but a remote, contingent, and residuary interest. Had the order contained mere general recitals that the mortgage was for the best interests of the minors' estate, without the further recitals of specific facts contradicting the general recitals, it, as against a collateral attack, would be far less vulnerable. But such general recitals—that to authorize the mortgage was for the best interests of the estate, to protect the bulk of the estate of the minors—are fatally wounded by other recitals in the order that the mortgage was authorized to secure a debt of $94,470 of a failing corporation in which each of the minors' interest consisted of only one-eighth of the capital stock, subject to the life estate of their mother. Hence the general recital in the order that the mortgage was authorized for the best interests of the minors' estate is destroyed by such other recitals, and, if any vitality was left in the order, it was annihilated by averments in plaintiff's complaint and reply and its stipulation of facts, the effect of which shows that the mortgage neither in law nor in fact was for the best interests of the estate of the minors, but was primarily authorized to secure the indebtedness of a tottering and reeling foreign corporation and for its direct benefit and that of Arnold, one of its creditors, and of the indorsers. We are not unmindful of the contention of the respondent that, while the mortgage securing the payment of the notes of the company inured to its benefit and to the benefit of others, nevertheless, authorizing the mortgage for such purpose protected the interests of the minors as shareholders of the company, which was financially embarrassed and unable to pay the notes without great sacrifice of its property, to the same extent that an adult stockholder, to protect his shares of stock in a corporation, may and frequently does

advance money for its credit or guarantee notes or other obligations on its behalf. But a court in such respect may not authorize a guardian to deal with his ward's property as an adult may deal with his own property. The latter without restriction may pledge his property for the debt of another, though it be partly for his benefit or for the exclusive benefit of a debtor or creditor. He may mortgage or sell his property and use the proceeds for any purpose he sees fit, or dispose of it by mere gift or donation. The court, however, may not authorize a guardian to do such things with his ward's property. In connection with this it is further argued that authorizing the mortgage here was analogous to authorizing a mortgage of a ward's property to raise funds to pay assessments levied on stock held by the ward in a corporation. The situations are not analogous. The argument trusts too much to looks and not enough to substance, just as does the general recital in the order that the mortgage was authorized to protect the bulk of the minors' estate, recital in discord with the recited record on which the order is based and therefore unwarranted. Here the record recites that the mortgage was authorized to secure the full payment of the notes of the company. That primarily and directly was for the benefit of Arnold and of the company. It indirectly inured to the benefit of holders of one-half of the capital stock of the company, strangers to the minors, and to the benefit of the guardian holding a life estate in the other half of the stock, and only remotely to the benefit, if any, of the small interests of the minors, which, if not then of no value, in all probability would become so or be dissipated before the life estate terminated. Under such circumstance the recitals in the order and in the mortgage, that authorizing and giving the mortgage on the real estate to protect such remote, contingent, and precarious interests was for the best interests of the minors' estate and to protect the bulk of it, become a mere mask to veil the unwarranted power of the court authorizing the mortgage in fact to secure a debt and obligation of others

and to benefit a creditor of a failing debtor. It therefore is our opinion, and we so hold, that on the face of the record of the court authorizing the mortgage and on the face of the mortgage itself, it appears that the mortgage in fact was authorized principally to secure the debt and obligation of others, that protecting the interests of the minors' estate was a mere incident and not the primary or real purpose authorizing the mortgage, and that in such respect the court exceeded its power and jurisdiction. *Warren* v. *Union Bank of Rochester,* 157 N. Y. 259, 51 N. E. 1036, 43 L. R. A. 256, 68 Am. St. Rep. 777; *Howard* v. *Bryan,* 133 Cal. 257, 65 P. 462; *Wright* v. *Atwood,* 33 Idaho, 455, 195 P. 625. While the statutes of the jurisdictions in which the decisions in the cited cases were rendered are in some respects not as broad as the Utah statute, yet, on the subject that the court may not authorize a mortgage on a minor's property to primarily secure the debt or obligation of another, the cases are as pertinent here as there.

The claim made that, since the court had jurisdiction of subject-matter and of the parties, and if on a hearing the finding of the court that the mortgage was for the best interests of the minors' estate was not supported by or was against the evidence, such finding and determination were mere error, or was an erroneous exercise of jurisdiction and hence not open to question on collateral attack, might be tenable were the order not, as here, self-destructive of such general finding. It is familiar doctrine that, though a court may have jurisdiction of subject-matter and of person and thus power to hear and determine, still in a cause may act, or make an order, or render judgment, beyond or in excess of jurisdiction—do something which it had no power to do. *Wright* v. *Atwood,* supra, and cases there cited. That is what the court did here—authorized a mortgage the effect of which was primarily to secure the debt and obligation of others. To characterize such purpose or result as under the circumstances disclosed on the face of the order and of the mortgage as being for the best interests,

the greatest advantage and usefulness, of the minors' estate, is a contradiction of terms.

In this connection it is also urged by the respondent that, because of our statute (Comp. Laws Utah 1917, § 7870), orders or decrees made by a court or judge in probate proceedings need not recite the existence of facts or the performance of acts upon which the jurisdiction of the court may depend, but only is necessary that they contain the matters ordered or adjudged, except as otherwise provided, and hence it was not essential that the existence of facts authorizing the mortgage be recited in the order. Though that be assumed, yet here the facts and purpose upon and for which the mortgage was authorized are recited and contained in the order, and what if anything showing such purpose was there lacking was affirmatively brought into the case by the plaintiff's pleadings, and by its stipulation of facts put in evidence by it for the consideration and attention of the court. Thus, whatever presumption of jurisdictional facts may be indulged from a naked order containing merely the matters ordered and adjudged is on the record itself dissipated.

While the requisite jurisdictional facts need not be recited in the order or judgment, yet, to properly invest the court with jurisdiction of the subject-matter, they must somewhere be made to appear in the mandatory record of the court, the record that describes the matter for the court's adjudication and determination and is the foundation of the judgment or sequestrating order, the record which resists all objections on collateral attack. Counsel for respondent are in error when they assert, as they do, that, since the statute gives the court power to authorize a mortgage of a minor's property, and since the existence of facts or the performance of acts upon which the jurisdiction of the court may depend need not be recited in the order or decree, no petition or affidavit or other pleading or any allegation of facts is essential to invest the court with jurisdiction, and that it may authorize a mortgage without

a formal application or petition, even upon the mere verbal suggestion of the guardian or upon the court's own motion, provided a hearing is had on due notice. It is fundamental that a petition or pleading of some kind is the juridical means of investing a court with jurisdiction of subject-matter to adjudicate it, and a judgment which is beyond or not supported by pleadings must fall. So too must a judgment or sequestrating order fall for other errors of law apparent on the face of the mandatory record, such as showing the judgment obtained to be at variance with the practice of the court or contrary to well-recognized principles and fundamentals of the law. A fact apparent from the mandatory record, showing that fundamental law was disregarded in the establishment of the judgment, will render it null and void for all purposes. And a judgment founded upon such a record is subject to direct and collateral attack, and will, sua sponte, be noticed by courts and acted upon by them without regard to the wishes or relation of the parties named upon the record. In other words, all proceedings must appear to be coram judice. The views herein expressed are not at variance with the cases, *United States Mortg.* v. *Sperry,* 138 U. S. 313, 11 S. Ct. 321, 34 L. Ed. 966; *Ricketts* v. *Chicago, etc., Ass'n,* 67 Ill. App. 71; *Eckeron* v. *Tanney* (D. C.) 235 F. 415; *Liebring* v. *Mathers,* 216 F. 1, 132 C. C. A. 245; *Fillmore, etc., Bank* v. *Kelly,* 62 Utah, 514, 220 P. 1064; *Florentine* v. *Barton,* 2 Wall, 210, 17 L. Ed. 783; 1 *Woerner, Am. L. of Adm.,* 2d Ed. § 1455; *First Nat. Bank of Winfield* v. *Banks,* 91 Kan. 54, 136 P. 915; *Clark* v. *Rossier,* 10 Idaho, 348, 78 P. 358, 3 Ann. Cas. 231; *Hine* v. *Morse,* 218 U. S. 493, 31 S. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 782, cited by respondent.

After the minors' mortgage was executed in January, 1921, the guardian, in March, 1922, presented a verified petition to the district court of Salt Lake county, alleging, among other things, that the order theretofore made authorizing the minors' mortgage was made without power or au-

thority of the court and was void, and that it was obtained on the advice and suggestion of Arnold, and praying that the mortgage be set aside and held for naught. The petition was presented to and heard by the court ex parte. In September, 1922, the court denied the relief prayed for in the petition, holding that the order was not a void order, that its rendition was within discretion of the court, and that "the order authorizing the mortgage, not being a void order, cannot be attacked in this ex parte motion—a collateral attack—the order authorizing the mortgage having been acted upon. Such proceedings are pleaded by the respondents as res adjudicata of the issue. It is conceded that, if the order on the record was void, no validity was given it by the pronunciamento on such ex parte proceedings. Such holding amounted to no more than the first necessarily implied holding that the court had power to authorize the mortgage to secure the debt or obligation of others. True, as is admitted, if the order on the face of the record was void, the court, on ex parte proceedings, or even on its own motion, could so declare it and set it aside. But on such ex parte proceedings, or on a mere ex parte motion, declaring an order valid which, on the face of the mandatory record, is void, is another matter. We therefore think the ruling on the ex parte proceeding was not res adjudicata.

Our conclusion, therefore, is that the mortgage of the minors was void, and that the court erred in ordering a foreclosure of it.

Now, as to the mortgage executed by the widow and the adult children. While the widow and one of the adult children indorsed the notes of Noble & Bragg, nevertheless no judgment was prayed for or rendered against them, or either of them, as such indorsers. The judgment of foreclosure required the interest of the widow and the adult children to be sold first, and directed the sale of the interest of the minors to meet any deficiency after the sale of the interest of the widow and of the adult children, and if any surplus

remained that it be paid to the guardian. It is contended by all of the appellants that the negotiations entered into between Arnold and the bank and Noble & Bragg, without the consent of the mortgagors, materially changed and enhanced the debt or obligation secured by the mortgages and thus altered their contractual obligations as sureties and thereby released them from the whole thereof. The mortgagors, admittedly, were mere sureties. It is well settled that a creditor and the principal debtor cannot, without the assent of the surety, vary the terms of the contract or obligation guaranteed by the surety or enlarge his liability, and that, when a surety's contract is so changed without his knowledge or authority, it becomes a new contract and is invalid as to him. The agreement, however, between the creditor and the principal debtor changing the contract must not only be founded on a sufficient consideration and be binding on the parties, but the new contract must be such as would be a valid defense by the principal debtor to an action on the original contract. *Phoenix Brewing Co.* v. *Rumbarger*, 181 Pa. 251, 37 A. 340, 59 Am. St. Rep. 647. The arrangement or agreement entered into between the bank, Arnold and Noble & Bragg had no such effect. It did not vary the terms of the notes nor of the mortgages given to secure them. Noble & Bragg, the principal debtor, could not successfully have pleaded such an arrangement or agreement in defense to an action on the notes. The new agreement was an independent contract between the principal parties, and though it was contemporaneous with and related to the same subject for which the notes were given, still it did not vary the terms of them nor of the mortgages. *Stuts* v. *Strayer*, 60 Ohio St. 384, 54 N. E. 368, 71 Am. St. Rep. 723. Noble & Bragg, the principal debtor, being without funds or credit and unable to run or care for its sheep, it was competent for the bank and Arnold to enter into an agreement with the company to advance moneys for such purpose and to agree that such advances should be a lien on the sheep and in-

cluded in and covered by the chattel mortgages held
by them. A mortgagee in possession is allowed and
should be credited with the costs of ordinary and rea-
sonably necessary repairs made on mortgaged property and
for reasonable disbursements and expenses necessary for
its proper management and protection, 3 *Pomeroy Eq. Jr.*
(7th Ed.) § 1217; 2 *Jones, Mortgages* (7th Ed.) §§ 1126-
1129; *Caldwell* v. *Hall,* 49 Ark. 508, 1 S. W. 62, 4 Am. St.
Rep. 64; *Leavitt* v. *Bell,* 59 Neb. 595, 81 N. W. 614. The
same rule applies to chattel mortgages. 11 C. J. 562, and
cases there cited. The court found that Arnold took posses-
sion of the sheep in January, 1921, and that the advances
made by him were made between that time and December,
1921, when the sheep were sold. That the advances so made
were reasonable and necessary to care for and protect the
sheep is not questioned. We thus have no difficulty in reach-
ing the conclusion that there was no change of the terms
of the contractual obligation of the sureties.

It, however, is further contended by the adult mortgagors
that they gave their mortgage on the agreement and under-
standing that a valid mortgage should also be given by the
minors on the same property and that the mortgage of the
adults was delivered on such condition. It is then claimed
that the mortgage of the minors was void and their interest
in the property thus not charged, and that therefore
there was a breach of the condition upon which the
mortgage of the adults was given and delivered. This
proposition is more serious. Again, it is well settled that,
where a bill, note, or mortgage, or other contract, is signed
and delivered by one on condition that another, or others,
shall also sign the contract and become obligated thereon,
and, if such condition is not fulfilled, the contract as to him
who signed and delivered it is of no binding effect as be-
tween the original parties or their privies, or assigns having
no equities other or greater than those of the original par-
ties. *Martineau* v. *Hanson,* 47 Utah, 549, 155 P. 432; *Central
Bank* v. *Stephens,* 58 Utah, 358, 199 P. 1018; 1 *Joyce, De-*

*fenses to Com. Paper* (2d Ed.) §§ 486 to 490. Where a stockholder of a bank executed a note to it on condition that all other stockholders should pay amounts proportionate to their share-holdings, the maker cannot be held liable on the note, except to a holder in due course, on a failure of fulfillment of such condition. *Bank of Tallassee* v. *Jordan,* 200 Ala. 182, 75 So. 930. The question is, Does the case here fall within such principle?

That a delivery be so conditioned it is not necessary that express words to that effect be used at the time. 2 Such conclusion may be drawn from all the circumstances which properly form a part of the entire transaction, whether in point of time they precede or accompany delivery. 1 *Joyce,* § 486; 8 C. J. 204. There was no evidence adduced on the subject. The matter all rests on averments in the pleadings. In the complaint of plaintiff, it, among other things, is averred that the mother and the two adult children promised that, if Arnold would refrain from instituting proceedings for the collection of the indebtedness as evidenced by the promissory notes and extend the time of payment until October 1, 1921, they would give a mortgage on their interest in the Salt Lake real estate, and, in addition thereto, a mortgage, in all respects as required by law and pursuant to a lawful order of the proper court, be executed and delivered on behalf of the minors whereby all of their right, title, and interest in and to such real estate be conveyed to Arnold as security for the payment of such indebtedness, and that "thereupon said Arnold stated to said Laura I. Bragg, William F. Bragg, and Robert R. Bragg (the adults) and expressed to them his agreement that, if all of the right, title, and interest of said Laura L. Bragg, William F. Bragg, Robert R. Bragg, Frederick I. Bragg, and Laura L. Bragg (the last two named being the minors), and each of them, in and to said real estate located in Salt Lake City, Utah, herein described, was by proper and lawful mortgage conveyed to him as security for said indebtedness whereby a full undivided one-half interest in and to said

last-mentioned real estate would be mortgaged to him for the purposes aforesaid, he would suspend proceedings for the collection of said indebtedness until October 1, 1921, and would extend the time of payment thereof until such last-mentioned date." Then it is alleged that, in pursuance thereof, the adults made their mortgage on December 27, 1920, and that on January 14, 1921, all of the right, title, and interest of the minors "was by due and lawful mortgage conveyed to said Arnold as security for the payment" of the indebtedness, and that, "in consideration of the execution and delivery of said two mortgages," Arnold suspended all proceedings for the collection of aid indebtedness and extended the time for the payment thereof until October 1, 1921.

In the separate answers of the adult appellants, it, among other things, is alleged that plaintiff was not a due course holder, and that it ought not to be permitted to enforce its mortgage as against the mortgaged property, "for that said mortgage was given as security only upon the understanding and agreement that the interest of the said minor defendants Frederick I. Bragg and Laura L. Bragg in and to said real estate should likewise be pledged jointly with the defendants Laura I. Bragg, William F. Bragg, and Robert R. Bragg for the payment of the balance due on said notes and mortgage and this defendant is advised and alleges the fact to be that she, as such guardian, had no right or authority to pledge or mortgage the interest of said minors in said estate as security for said debt." The same averment is contained in all of the answers of the adults.

The court found:

"That after the maturity of said promissory notes and each of them, to wit, in the month of December, 1920, said Arnold, pursuant to negotiations between the parties, promised and agreed that if said defendants Laura I. Bragg, William F. Bragg, and Robert R. Bragg, would make, execute, and deliver to him a valid mortgage of all of their right, title and interest in and to the Salt Lake real estate hereinafter described as further security for the payment of said promis-

sory notes and each of them, and if in addition to said last-mentioned mortgage another mortgage executed in all respects as required by law and pursuant to a lawful order of the proper court duly made and granting authority therefor, would be executed and delivered whereby all of the right, title and interest of said defendants Frederick I. Bragg, a minor, and said Laura L. Bragg, a minor, in and to said Salt Lake real estate would be conveyed to said Arnold as further security for the payment of said promissory notes, he (the said Arnold) would extend the time of payment of said promissory notes and each of them and would suspend all proceedings for the collection thereof until October 1, 1921. That pursuant to said agreement, and in consideration of the receipt by him for such purposes of the two mortgages referred to, said Arnold did extend the time of payment of said promissory notes and each of them and did suspend all proceedings for the collection of said promissory notes and each of them until October 1, 1921."

Then it is found that on December 27, 1920, the guardian made application to the district court of Salt Lake county for an order authorizing her to mortgage the estate and interest of the minors, and that an order was granted on January 14, 1921, and the mortgage executed by the guardian on the same day. The court further found that Arnold would not have extended the time of payment of the promissory notes or any of them, and would not have assumed the burden of feeding and caring for the sheep, and would not have expended the sum of $11,143.68, or any part thereof, for such purpose, had he not in good faith believed that he would actually receive and had he not relied upon the receipt and validity of the said mortgages on the Salt Lake real estate.

Because the court was without power to authorize the mortgage on behalf of the minors, Arnold, under the agreement as averred in the complaint and as found by the court, at no time was bound by the agreement, for it is expressly averred and found that he agreed to the extension of time on the condition that a lawful and binding mortgage securing the indebtedness be executed by the minors as well as by the adults. Such agreement was bilateral and not only unilateral. We think the effect

of the averments and of the findings shows a conditional delivery of the mortgage by the adults. That their mortgage was signed and delivered on the condition that the interests of the minors in and to the real estate be pledged jointly with their interests is clearly averred by them. As so averred, a failure of a fulfillment of the condition rendered the mortgage of the adults of no binding effect; and, holding as we do that the mortgage of the minors is void and hence their interests not pledged, the condition was not fulfilled. The matter as alleged in the complaint is not as direct as in the answers. Still the effect is the same. As there alleged, it is that Arnold stated to the adults "and expressed to them his agreement" that, if the interests of each and all of the adults and of the minors were "by proper and lawful mortgage conveyed to him as security for said indebtedness" he would extend the time of payment and that, "in consideration of the execution and delivery of said two mortgages," one by the adults and the other by the minors, he extended such time. And to that effect is the finding of the court. Thus the proposition as averred in the complaint and as found is that, if all gave a valid and binding mortgage, the extension of time would be given. The adults accepting the proposition and signing and delivering their mortgage in pursuance thereof, it necessarily is implied that they did so upon all of the stated conditions in the proposition, including the one that the minors give a valid and binding mortgage of their interests. Thus, if X "expresses his agreement" to A and B that, if they, and if C and D, give a valid and binding mortgage of each and àll of their interests in certain property, in which all had an undivided interest, X would do so-and-so, and if A and B give a valid and binding mortgage of their interests, but C and D do not, there is a failure of a fulfillment of a material condition, for in such case it is clear that A and B bound themselves only in the event that C and D also bound themselves and pledged their interests. Such is tantamount to a declaration or state-

ment of A and B assented to by X, that A and B would mortgage their interests by a valid and binding mortgage if C and D would do likewise; and, if A and B sign and deliver their mortgage but C and D fail to do so or to pledge their interests, without connivance or hindrance on the part of A and B, and C and D thus are not bound, neither are A and B. In such view, the proposition, whether considered as averred in the complaint or in the answer, shows a conditional delivery of the mortgage of the adults. That there were two mortgages does not alter the situation, for both were parts of the same transaction and of the same agreement, as is the complaint averred, and the one was conditioned on the other. That the guardian gave a mortgage on behalf of the minors which is nothing is the same as though no mortgage on their behalf was given.

Thus, on the pleadings and the findings, the adult appellants were also entitled to prevail. The court therefore erred in foreclosing the mortgage even as to them.

The order is that the judgment of the court below as to all of the appellants be, and the same hereby is, reversed and vacated. The case is remanded to the court below, with directions to dismiss the action on merits as to the minors. On the pleadings and findings, which as to the issue of a delivery merely followed the complaint, the adult appellants likewise are entitled to a dismissal of the action on merits. We, however, as to them, are not disposed to order such a direction, if the plaintiff is in position to amend its complaint and try the issue of delivery. The case thus, as to the adult appellants, is remanded for a new trial with leave to the plaintiff to amend its complaint if it be so advised. If no such amendment within 10 days after remittitur or such further time as the district court may grant, is tendered, then the district court is directed to dismiss the action on merits also as to the adults. Costs to appellants.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.